LEAH H. MILLER, The (ELLIOTT v.). See Case No. 4,393a.

LEAHY (WHITE v.). See Case No. 17,551.

## Case No. 8,160.
### LEAK v. ISAACSON.
[Abb. Adm. 41.] [1]

District Court, S. D. New York. July, 1847.

SEAMAN'S WAGES — RECEIPT IN FULL — DEMAND NOT SATISFIED—RECEIPT EXPLAINED—EFFECT OF RECEIPT.

1. A receipt in full of all demands given by a seaman to the master or owners, is open, in a court of admiralty, to explanation by proof that at the giving of the receipt there existed a demand in favor of the seaman which was not in fact satisfied by the payment made.

2. When so explained, the receipt does not bar the seaman from recovering upon such outstanding demand.

3. To free a demand from the operation of a receipt in full of all demands, in a court of admiralty, it is necessary that the evidence that there was a valid demand existing when the receipt was given, and that it was in fact not satisfied by the payment made, should be clear and convincing.

This was a libel in personam, by George Leak against Michael Isaacson, owner of the steamboat Proprietor, to recover a balance of wages earned as engineer. The facts were substantially as follows: The libellant was hired by the respondent in New York to go to Charleston, and there to go on board the Proprietor as engineer. No wages were agreed upon; but the value of the services for the time for which the libellant was at-

---

[1] [Reported by Abbott Brothers.]

tached to the boat was shown to be $70. The libellant went to Charleston at his own expense,—a service shown by the testimony to be worth $25, exclusive of travelling expenses. He also boarded for some days in Charleston. On the termination of libellant's service on the boat, the crew were paid off by Martin, the master, the libellant receiving the sum of $70. Upon that occasion, he, in common with the rest of the crew, signed a receipt in the following terms: "This is to certify, that the undersigned have this day received, from Mr. Michael Isaacson, the full amount of our and each of our claims or demands, of every nature, against the steamboat Proprietor or her owner. Dated New York, May 31, 1847." Prior to this time, the libellant had received at Charleston the sum of $19; but it did not appear whether this was for services or travelling expenses. The respondent now relied upon the receipt as being conclusive against the claim. The libellant offered evidence in explanation of the receipt as follows: Three witnesses, who were present when the receipt was signed, testified that Leak then claimed a balance due him, over and above the $70 earned upon the boat. A fourth witness testified that the respondent had told him, that he, the respondent, had agreed to pay the libellant $25 for his journey to Charleston, and that Captain Martin was to pay the rest. The principal question was as to the conclusiveness of the receipt.

Alanson Nash, for libellant.
J. Townsend, for respondent.

BETTS, District Judge. A receipt in full may form an exception to the familiar principle of law which permits receipts to be explained by parol evidence. The receipt of a sum in full of a debt is something more than simple evidence of the payment of the sum specified. Such a receipt betokens a controversy between the parties as to the amount due, a difference of opinion upon that point, and a mutual compromise and adjustment of a disputed indebtedness at the precise sum mentioned in the instrument. The receipt in full may well be regarded as embodying a compromise; and although fraud or serious mistake will sometimes authorize it to be disregarded, yet, under the municipal law as it prevails throughout all our states, such an instrument can only be avoided by clear evidence of a deceit, or gross mistake as to the rights concluded by it. The fact that the sum received is inadequate compensation for the claim, does not constitute a case which authorizes the disregard or opening of a formal and final receipt in writing; it is necessary, further, that the party should show that he acted under ignorance or misapprehension as to the nature or extent of his rights involved therein. Lawrence v. Schuylkill Nav. Co.

[Case No. 8,143]. Thus, if the rights in claim are questionable, and honestly resisted, and time is given the creditor to consider the proposed payment, his receipt, given for less than his true demand, will not be set aside. It will be regarded as meaning deliberately to accept a lesser sum in payment in full of all demands; and cannot be easily opened to admit proof that unspecified particulars were intended to be excepted.[2]

In the view of admiralty, however, there is reason for imposing a more restricted rule in respect to receipts passed by seamen to masters, owners, or shipping agents. The parties in these settlements do not usually deal with each other upon equal terms. The seaman stands in a position which exposes him to be coerced or deluded into giving a receipt of this character, upon the temptation of a little ready money in hand, when no bonâ fide settlement has been made; and upon the ground of this inequality, and as a measure of protection to parties who are seldom qualified to protect themselves, admiralty will admit evidence in explanation of a receipt, no matter how clear, explicit, and conclusive its terms and solemnities may be. The doctrine of the maritime law on this subject is fully stated in the case of The David Pratt [Case No. 3,597]. In that case, in answer to a demand for wages, the defendant set up a receipt, under seal, signed by the libellant and others of the crew, of specified sums, "in full for our services in wages on board said vessel; and in consideration whereof, and of one cent to each of us paid, we have released, and do hereby release and discharge forever, the master, officers, and owners of said vessel, and each

---

2 The case of Cash v. Freeman, 35 Me. 483, illustrates this principle. That was an action upon a note for $12, due July, 1851. The defence relied on a receipt given May, 1851, for $1.50, in full of all demands. Although the note was not surrendered at the time of giving the receipt, it was held to be within its operation. See, also, Cunningham v. Bachelder, 32 Me 316, where the principle that promissory notes, although left in the hands of the payee, are within the legitimate operation of a receipt in full, is also laid down. In confirmation of the general doctrine laid down in the text respecting the operation of the receipt in full, in the courts of law, see Paige v. Perno, 10 Vt. 491; Reid v. Reid, 2 Dev. 247; Emrie v. Gilbert, Wright, N. P. 764; Bailey v. Day, 26 Me. 88; Palmerton v. Huxton, 4 Denio, 166; Thompson v. Faussat [Case No. 13,954]; Bristow v. Eastman, 1 Esp. 173; Alner v. George, 1 Camp. 392; Eve v. Mosely, 2 Strob. 203; Holbrook v. Blodget, 5 Vt. 520; McDowall v. Lemaitre, 2 McCord, 320. To learn what grounds have been held sufficient to authorize the opening of a receipt in full by evidence of fraud or mistake, consult Thomas v. Austin, 4 Barb. 265; Patterson v. Ackerson, 1 Edw. Ch. 101, 2 Edw. Ch. 427; Derrickson v. Morris, 2 Har. [Del.] 392; Dibdin v. Morris, 2 Car. & P. 44; Trisler v. Williamson, 4 Har. & McH. 219; Sessions v. Gilbert, Brayt. 75; Benson v. Bennett, 1 Camp. 394, note; Snyder v. Findley, Coxe [1 N. J. Law] 48; Hogg v. Brown, 2 Brev. 223; Middleditch v. Sharland, 5 Ves. 87.

of them, of and from all suits, claims, and demands, for assaults and battery and imprisonment, and every other matter and thing, of whatever name or nature, against said schooner David Pratt, the master, owners, and officers, to the day of this date."

It was conceded by the court that this instrument was primâ facie evidence of payment, and sufficient, until falsified by positive proof, or strong presumption; and this is undoubtedly correct. But the notion that such an instrument, formal and solemn though it was, must be accepted as in itself conclusive against the claim, was justly repudiated as contrary to the free and equitable spirit of admiralty jurisprudence, however consonant it might be with the more rigorous doctrines of the common law.

A very analogous decision was made in the supreme court of New York, in the case of Thomas v. McDaniel, 14 Johns. 185. The decision in that case rested upon the indicia of fraud observable in the facts shown, rather than upon any general principle of protection to seamen; although the latter consideration is distinctly adverted to in the opinion of the court. The action there was by a seaman against the master for an assault and battery, committed during the voyage. The defendant offered a receipt, signed by the plaintiff, acknowledging to have received $60.50, "in full of all demands against the ship Independence, her officers and owners, for wages; also, $1.00, as a full compensation for every thing else."

A witness testified, that upon the settlement he explained the receipt to McDaniel, by stating that the one dollar was intended as a full compensation for all other claims except wages; and that the plaintiff at first refused to sign the paper, and waited three or four days. The master then put the money and the receipt upon the table, and told the seaman that he might sign or not, as he pleased. The plaintiff read over the paper and signed it, and received the money, nothing being said about assault and battery. The judgment in the court below was for the plaintiff, and was affirmed on appeal.

"There is strong ground to infer," say the court, "that the receipt was unfairly obtained. It was coupled with a receipt for the wages of the seaman, and the evidence shows that his wages, after being liquidated at $60.50, were withheld by the captain during three or four days, because the plaintiff refused to sign the double receipt. To a person in the situation of a seaman just arrived in port, after a long voyage, and probably without a cent of money, this was a fraudulent constraint on the part of the captain, from which the law will protect the seaman. It cannot be doubted, that if the wages had been unconditionally paid, the plaintiff would peremptorily have refused to sign the receipt for one dollar for every thing else."

The receipt in this case is, therefore, not to be regarded as absolutely concluding the libellant, while it is primâ facie evidence of payment in full. It is open in this court to explanation, not only by evidence of fraud or of ignorance of the outstanding claim, but also by clear and distinct proof, that at the time of the settlement there was a valid outstanding claim which was not in fact embraced in the payment actually made. This would not be sufficient at common law, unless it were also shown that the rights of the party in respect to such outstanding claim were in some respect unknown or misunderstood by him, and this through no fault or neglect of his. In admiralty, however, it is enough that a valid outstanding claim be shown, if the proofs are such as to put its existence and validity beyond question. I have, therefore, received and considered the evidence offered by the libellant upon this point.

The evidence does not appear to me of that clear and explicit character which will justify the court in disregarding the receipt. It is denied by the answer, and is at least equivocal upon the proofs, that the libellant was entitled to any wages antecedent to the time when he joined the boat at Charleston. The libellant claims to regard the payment made to him in Charleston as having been made only upon account of his demand both for wages and expenses accrued during the journey; but I think it may be fairly regarded, under the proofs as they stand, as intended for a satisfaction of all claims preferred by him upon the score of his employment prior to his joining the steamboat; particularly as it is equivocal whether he was entitled to demand any thing beyond the reimbursement of his expenses. In that view of the case, the receipt of the 31st of May, in my opinion, closed the whole transaction, and the respondent is accordingly entitled to a decree dismissing the libel. Decree accordingly.

NOTE. A rehearing of the cause was had before a commissioner in August, 1847, for the purpose of taking additional proof. The commissioner reported that $25 was due to the libellant. The cause came again before the court in January, 1848, upon exceptions to the report, when the following decision was made:

"BETTS, J. The additional evidence adduced before the commissioner in explanation of the receipt relied upon by the respondent in this case, consists in the testimony of a witness, who states that the usual charge for a passenger on board the steamer Southerner to Charleston was $25. He also states that mariners employed for other ships were not taken gratuitously on board that vessel. Upon this the commissioner reports $25 to the libellant. I have reviewed all the pleadings and proofs to see whether any reasonable evidence is furnished tending to show that the libellant was not paid to his satisfaction for all the services and expenditures rendered by him under his engagement with the respondent. I do not think the suppletory testimony taken before the commissioner in any respect strengthens the libellant's case. It is not additional to that produced on the hearing, further than that it fixes the usual price of a passage to Charleston. It does not show that

the libellant paid that amount, nor that the $19 paid him in Charleston was not advanced to cover that disbursement. If any thing could be presumed to be due, it would not exceed $6, the difference between $19 and $25, and it is wholly conjectural whether or not the libellant ever disbursed that sum. The claim is a very small one, and does not merit the protracted litigation it has generated. The libellant ought to have remained silent after his full and solemn receipt in writing, unless he was able to give convincing proof that other demands were due him, and were reserved out of that full settlement. I am not satisfied that this was so, and shall accordingly allow the exception taken to the report, with the costs accruing upon the exception."