PATTERSON *vs.* ACKERSON and others.

*It seems,* where a tenant covenants to pay rent and the premises are burnt, he is still liable and equity cannot relieve him.

But where a tenant covenants to yield up the premises in good repair at the end of the term, damages by fire to the manufacturing house excepted, "and " in case of such accident the rent was to cease ;" *It was held,* although upon such accident the rent ceased, still the term did not, the tenant could hold until the term had expired, and he was not liable in chancery for a reasonable rent as for use and occupation.

Chancery will often grant a second, and sometimes a third, fourth, and even fifth trial of a feigned issue, in cases where a court of law would not disturb a first verdict.

It seems, where a feigned issue is awarded to try a suggested forgery in a receipt held by a complainant, the defendants are bound by the same rules of evidence as if the party was upon his trial under an indictment for a forgery.

*September* 16, 1831.

*Landlord and Tenant. Construction of Covenant. Feigned issue. Evidence.*

THE complainant filed his bill in this cause to redeem a mortgage given by him to the defendants as collateral security for rent payable under a lease made by the defendants to him of a manufacturing establishment in Rockland County, consisting of a factory with its machinery, about five acres of land, and buildings erected thereon.

The demise was for the term of seven years from the twentieth day of August, one thousand eighth hundred and twenty-one, at an annual rent of six hundred dollars, payable quarterly, during the term ; but, by a subsequent agreement, the rent was reduced to five hundred dollars. Besides the usual *reddendum* clause, the lease contained a covenant by the complainant, that he would, at all times during the term, keep the premises in repair by and with all manner of necessary reparation when and as often as the same should require, (damages by fire excepted.) And, in the surrendering clause, he also covenanted to yield up the premises at the ex-

piration of the term, in good and sufficient repair and condition, (damages by fire or any accidental destruction to the manufacturing house only excepted;) and then is added, "and in case "of such accident the within mentioned rent to cease."

On the 13th day of April, 1826, the factory or manufacturing house was entirely destroyed by fire: but the complainant still retained possession of the residue of the demised premises; and, although requested by the defendants after the fire to give up the possession, he refused and insisted he had a right to hold without paying any rent. Upon his removal from the premises to the city of New York, in the autumn of 1826, he still continued the possession, by locking the doors of the remaining houses and taking the keys with him.

It was contended, on the part of the defendants, that the complainant was liable for the regular amount of rent during his possession since the fire; and if not so, that he ought to pay a reasonable rent for occupation.

Mr. *James O. Grim*, for the complainant.

Mr. *Edward N. Mead*, for the defendants.

THE VICE-CHANCELLOR. The main question which this case presents is, whether the complainant is liable for any rent after the destruction of the factory by fire, in consequence of his refusal to give up the possession to the defendants, his lessors?

*October* 24.

There is no difficulty as to the law arising from the covenants contained in the lease. Under the covenant to repair and surrender the premises at the expiration of the term in good condition, the complainant would have been liable to rebuild after the accidental fire, had he not protected himself by the exception; and but for the additional saving, that in case of such accident the rent was to cease, he would have been liable also for the whole rent during the term. Such is the settled law.

In some early cases in the court of chancery, an effort appears to have been made to protect the tenant against this rigid

13

rule; and to relieve him from the consequences of his covenant to pay rent where the premises were burnt down and the land-lord neglected to rebuild. Thus, Lord *Northington*, in *Brown* v. *Quilter*, *Ambl.* 619, and in *Camden* v. *Morton*, (mentioned in 2 *Eden*, 218, and in 18 *Ves.* 118, but no where reported,) appears to have gone a great way towards establishing the doctrine that a covenant for quiet enjoyment, although it did not oblige the landlord to rebuild, afforded a ground of equity for the tenant to be protected from the payment of rent until the house should be rebuilt, especially where the landlord had insured the building and had received the amount of his insurance; and Lord *Apsley* (afterwards Earl *Bathurst*) is said to have made a similar decision in the case of *Steele* v. *Wright*, which came before him in 1773: cited in *Doe* v. *Standham*, 1 *T. R.* 708. But, subsequent cases have very much shaken, if not entirely overruled, those decisions: see Mr. Eden's note to *Brown* v. *Quilter*, 2 *Eden's C. R.* 219. The first of these cases is *Hare* v. *Groves*, 3 *Anstr.* 687, where a tenant having covenanted to repair, damages by fire only excepted, and being sued at law for rent which accrued after the premises were destroyed by fire, the court of exchequer refused to relieve him. Chief Baron *Macdonald* reviewed the former decisions, and decided, that as there was no defence against an action at law, so the tenant had no remedy in equity against the effect of his express covenant to pay rent during the term. A similar case arose before Lord Eldon, *Holtzapffel* v. *Baker*, 18 *Ves.* 115, in which he fully approved of the decision made by the court of exchequer, and declared, that after so solemn a determination of the question, the court ought to abide by it; adding, he really could not perceive the equity in that sort of case. He, accordingly, dissolved an injunction which had been granted to restrain proceedings at law against the tenant for rent until the premises, which had been totally destroyed by fire, should have been rebuilt. The like decision was made by the supreme judicial court of Massachusetts, exercising equity powers; where Storey, *arguendo*, insisted upon the equitable interposition of the court in favor of the tenant: but *Sewall*, J., in delivering the opinion of the court, showed, that no such equity

existed against the express covenants of the lease: *Fowler* v. *Bolt*, 6 *Mass. R.* 63.

I am not aware that the question has ever met with a judicial determination in this court; nor have I examined it now for the purpose of deciding it: because the present case does not necessarily call for a decision upon this point. But I have, nevertheless, deemed it useful to present the view which courts of equity, in the later cases, have taken of the subject, in order that persons becoming tenants may guard themselves by the terms of their contract and not rely upon a supposed equity to protect them from the consequences of such covenants. These decisions are, nevertheless, important as regards even the present case, because they serve to show that courts of equity cannot, any more than courts of law, relieve against the express terms of a contract where no fraud, accident or mistake has intervened and that this court is bound to put the same construction upon a covenant and to give it the same effect which a court of law would do. It is true, equity will relieve against a penalty or forfeiture by a breach of covenant, when a compensation can be made in damages: but the exercise of this power is not at variance with the acknowledged right of a party to the whole benefit of his contract, whenever he is compelled to resort to a court of law or an equitable tribunal to enforce it.

The question then arises—what is the true construction of the covenants in the lease constituting the contract between these parties?

That the rent agreed to be paid was to cease upon the destruction of the factory by fire is declared in express terms; and so far it presents no difficulty. But, whether the term was also to cease and determine by that event, is another question!

There is nothing expressed in the lease to this effect. The surrendering clause contains no provision of the sort; but, on the contrary, speaks of the surrender at the end of the term of seven years. The words, usually found in leases, " or other " sooner determination of the term," are omitted. I see, therefore, nothing in this part of the lease which looks like a surrender or cessation of the term short of the expiration of the

seven years. Another clause, in my judgment, favors the same conclusion. The lessee covenants to pay the taxes upon the premises from time . to time · and at all times during the term, without any exception or limitation : from which it may be inferred that, whatever should be the condition of the property or the tenant's exemption from rent, he was nevertheless to hold the possession, (because he was bound absolutely to pay the taxes for the whole term.)

Again : the lessors covenanted for the quiet enjoyment by the lessee, during the whole term of seven years ; upon condition, however, that he payed the rent and performed all the covenants and agreements comprised in the lease. The rent here spoken of must mean the rent which was payable ; and with this understanding it is fair to conclude, that the covenant for quiet enjoyment secured to the lessee the possession, even after the happening of the event by which the rent was to cease.

This, I think, is the only construction to be given to the lease in question, after taking into consideration all its clauses and provisions; and although the complainant retained the possession after the fire, I am of opinion that, as the rent payable by the lease was to cease on the happening of this event and as the complainant's bond and mortgage were given as security for such rent only, the complainant is entitled to redeem upon payment of the rent up to that time.

It is contended by the defendants' counsel, that the complainant is liable for a reasonable rent subsequent to the fire, by reason of his occupation of the premises and his withholding the possession from the defendants ; while the complainant insists, that if this be so, it is not rent accruing under or by virtue of the lease and the mortgage does not cover it—the defendants' remedy being at law as for use and occupation ; and to this end authorities have been cited : *Langworthy* v. *Smith,* 2 *Wend.* 587 ; *Gram* v. *Seton,* 1 *Hall's Sup. Court R.* 252. Whether the complainant be liable for rent aside from the lease, as for use and occupation, for the time he held possession after the destruction of the building by fire, is a question I shall not undertake to determine or express any opinion

upon. I am satisfied it has no relation to the mortgage, and cannot be set up against the right to redeem.

There is another matter involved in dispute in this cause; but about which there is no difficulty as to the course to be adopted. The complainant produces a receipt given to him for rent paid in full to a certain period; which the defendants allege has a forged or altered date. The parties agree as to the propriety of a feigned issue upon this question. I shall accordingly direct it; and, after the determination of the question in relation to the receipt, there must be a reference to a master to take an account of the amount, if any, due to the defendants for rent up to the thirteenth day of April, one thousand eight hundred and twenty-six.

*1831.*

*PATTERSON*
*v.*
*ACKERSON.*

---

This cause was again before the court, upon the coming in of the verdict on the feigned issue. The jury had found for the complainant, pronouncing the receipt, mentioned in the latter part of the above opinion of the Vice-Chancellor, genuine and given in the year 1825, as its date imported. (The question for the jury was, whether the 5 had not originally been a 3.)

A motion was made for a new trial, principally upon the ground of the verdict being against the weight of evidence.

Mr. *James O. Grim*, for the complainant.

Mr. *Samuel Sherwood*, for the defendants.

THE VICE-CHANCELLOR, I am satisfied, if this case was in a court of law, a new trial would not be granted under the present circumstances. The rule appears to be well established and invariably adhered to, that where the evidence at the trial is contradictory, leaving the question in doubt, and is fairly submitted to the jury to decide upon the testimony and the credibility of the witnesses, the court will not set aside the verdict, although it may seem to be against the preponderance of the evidence: and more especially the court will not inter-

*1832.*

*September 3.*

PATTERSON
v.
ACKERSON.

fere, if no rule of law has been violated, where the action is of a vindictive or criminal nature. It is hardly necessary to cite authorities on the subject—the books abound with them.

But the same rule does not prevail with regard to feigned issues or trials at law directed by the court of chancery: for this court will frequently grant a second and sometimes a third, fourth and even a fifth trial where a court of law would not interfere or disturb the first verdict. This arises from the consideration that, after all, the responsibility of the decision rests upon the judge in equity; the issue being ancillary to his decision for the purpose of informing his conscience as to doubtful facts; and, therefore, his conscience must be satisfied before he can proceed to base a decree upon the finding of the jury. The case of *Stace* v. *Mabbot*, 2 *Ves. sen.* 552, is a strong one upon the subject. There, the question was as to the forgery of a certain paper, in relation to which an issue had been tried and the judge who tried it certified his satisfaction of the verdict. A motion was, however, made for a new trial before Lord Hardwicke, who adverted to the distinction between the court of chancery and a court of law in this respect; and then proceeded to say, that this court, in several cases, had directed a new trial for further satisfaction, notwithstanding it would not have been granted by a court of law, because it is *diverso intuitu* and the court proceeds on different grounds. His lordship went on to mention a case which he remembered before Lord King, wherein, after several trials and verdicts returned in favor of a deed creating a rent charge which was alleged to be a forgery, the verdicts were declared to be unsatisfactory and, notwithstanding, the deed was decreed to be cancelled. So, in the case before him, he could not say his conscience was satisfied; and he, therefore, directed another trial upon the issue; taking care to have it understood that he proceeded upon the principles of the court of chancery alone and did not intend to break in upon the rules which were wisely laid down by courts of law as to granting new trials. These principles had been acted upon by him a short time before in *Faulconberg* v. *Pierce*, *Ambl.* 210.

Lord Eldon, likewise, in *The Warden of St. Paul's* v. *Morris*,

1831.

PATTERSON
v.
ACKERSON.

9 *Ves.* 155, says, that new trials, after trials at bar, have been granted here, when courts of common law would not allow them: and upon this consideration, that the result must be satisfactory to the conscience of the court.

The question then is, whether, upon the whole case, the verdict carries with it and produces in the mind that degree of satisfaction which this court is in the habit of requiring? After a careful examination of the testimony and weighing all the circumstances, I am constrained to say it does not. With every inclination to put a stop to the controversy here, I am still in doubt and by no means satisfied with the conclusion that the receipt is a genuine one in respect to its date. The burthen of proof on this subject is certainly upon the defendants; and they are perhaps bound by the same rules of evidence as if the party was upon his trial under an indictment for a forgery: *Thurtell* v. *Beaumont,* 1 *Bingham's R.* 339.

[His honor here went into an examination of some parts of the evidence which came out on the trial.]

Upon the whole, I must send the issue back to another jury, on payment, by the defendants, of the costs of the last trial. This, as appears from the case of *Stace* v. *Mabbot* before cited, is a reasonable condition.