HORACE C. SILSBY, WASHBURN RACE, ABEL DOWNS, HENRY HENION, AND EDWARD MYNDERSE, APPELLANTS, *v.* ELISHA FOOTE.

Foote's patent declared good; for the combination of machinery used in "the application of the expansive and contracting power of a metallic rod by different degrees of heat, to open and close a damper which governs the admission of air into a stove, in which such rod shall be acted upon directly by the heat of the stove or the fire which it contains."

The award by the Circuit Court of damages for an infringement of the patent affirmed, by an equal division of this court; but the allowance of interest overruled.

Where a patentee claims more than he is entitled to, his patent may still be good for what is really his own, provided he enters a disclaimer for the surplus without any unreasonable delay. In this case, the patentee was allowed to recover damages for an infringement, but not to recover costs, agreeably to the provisions of the act of Congress of the 3d March, 1837.

THIS was an appeal from the Circuit Court of the United States for the northern district of New York, sitting as a court of equity.

In May, 1842, Foote obtained a patent for an improvement in regulating the draught or heat of stoves. The claim which he made was this:

What I claim as my invention, and desire to secure by letters patent, is the application of the expansive and contracting power of a metallic rod by different degrees of heat, to open and close a damper which governs the admission of air into a stove or other structure in which it may be used, by which a more perfect control over the heat is obtained than can be by a damper in the flue.

I also claim as my invention the mode above described of letting the heat of a stove, at any requisite degree by which different degrees of expansion are required, to open or close the damper.

I also claim the combination above described, by which the regulation of the heat of a stove or other structure in which it may be used, is effected; and I also claim as my invention the mode above described of connecting the action of the metallic rods with the damper, so that the same may be disconnected when the damper shall have closed, and the heat shall continue to rise, &c. ELISHA FOOTE, Jr.

Afterwards, in March, 1847, he filed the following disclaimer:

*To the Commissioner of Patents:*

The petition of Elisha Foote, of Seneca Falls, in the county of Seneca and State of New York, respectfully represents, that your petitioner obtained letters patent of the United States for an improvement in regulating the draught of stoves, which letters patent are dated on the 26th day of May, 1842; that he has reason to believe that through inadvertence and mistake the claim made in the specification of said letters patent in the following words, to wit: "What I claim as my invention, and desire to secure by letters patent, is the application of the expansive and contracting power of a metallic rod by different degrees of heat to open and close a damper, which governs the admission of air into a stove or other structure in which it may be used, by which a more perfect control over the heat is obtained than can be by a damper in the flue," is too broad, including that of which your petitioner was not the first inventor.

Your petitioner, therefore, hereby enters his disclaimer to so much of said claim as extends the application of the expansive and contracting power of a metallic rod by different degrees of heat to any other use or purpose than that of regulating the heat of a stove, in which such rod shall be acted upon directly by the heat of the stove, or the fire which it contains; which disclaimer is to operate to the extent of the interest in said letters patent vested in your petitioner, who has paid ten

dollars into the treasury of the United States, agreeably to the requirements of the act of Congress in that case made and provided.

This did not apply to the whole of his claim, but only to a part of it.

In 14 How., 218, will be found the report of a suit which Foote instituted against some of the present appellants. The judgment of the court below being affirmed by this court, that suit was brought to an end.

On the 9th of October, 1848, Foote filed his bill on the equity side of the Circuit Court against the present appellants, complaining that they continued their infringement upon his patent, praying for an injunction, an account, &c., &c. After other proceedings were had in the case, Mr. Justice Nelson (in vacation, viz: September, 1850) ordered an issue to be made up at law upon the first and third points of the claim, the second and fourth not being drawn into controversy. In June, 1851, the trial at law took place, which resulted in a verdict for the defendants.

Afterwards, the cause came before the court, on a hearing of the pleadings and proofs, and case made upon the trial of the feigned issues; and after hearing of counsel for the respective parties, the court, on the 29th day of August, 1853, directed the following order to be entered:

### In Equity.

This cause having been heard on argument by counsel for the respective parties on the pleadings and proofs, and upon the case made since the trial of the feigned issue therein, and the court having considered the same, and being of the opinion that the complainant was the first and original inventor of the application of the expansion and contraction of the inflexible metallic rod to the regulation of the heat of stoves, as described and claimed in his patent, adjudge and decree that the defendants have infringed the said patent in making and vending the regulators of stoves, as charged in the said bill of complaint, and that the said complainant is entitled to have a perpetual injunction to restrain said defendants, their agents, servants, and all claiming or holding under or through them, from making, vending, or using, or in any manner disposing of any regulator or regulators of stoves, embracing the invention or improvements described in said letters patent, namely, any regulator in which the expansive and contracting power of an inflexible metallic rod, which expansion and contraction, if produced by changes in the heat of the stove regulated, shall

be applied to the damper to regulate the heat thereof, and this notwithstanding the verdict of the jury upon the feigned issue, heretofore rendered on the trial of the same.

And it is further adjudged and decreed, that the cause be referred to Augustus A. Boyce, Esq., the clerk of this court, to ascertain and report the number of regulators for stoves embracing the principle aforesaid that have been made, and also the number sold by the said defendants, or either of them, since the 23d day of March, 1847, and the damages complainant has sustained, or use and profits the defendants, or either of them, have derived by reason of such infringement, since the time last aforesaid; and, upon the coming in and confirmation of the said report, that said complainant have a decree and execution for the amount found due to him, and also for the costs in this suit, to be taxed.

It appeared from the record that the court, on the trial of the feigned issues, instructed the jury that the first claim of the patentee was disproved by the prior construction of the Saxton stove, and that the patent must rest for its validity upon the other claims.

In June, 1854, the master made his report, which was very voluminous, and to which both parties filed numerous exceptions, some of which were overruled and others allowed by the court. The result of some of the rulings made a further reference to the master necessary, when both parties expressed a desire that the court should make the examination itself. This was accordingly done, when the following decree was passed, viz:

This court having accordingly made such examination and determination, it is further ordered, adjudged, and decreed, and this court, by virtue of the power and authority therein vested, doth further order, adjudge, determine, and decree, that the said defendants are respectively liable to the said complainant for the sums of money hereinafter set forth, in the manner hereinafter particularly mentioned, for their profits of the use by the said defendants, or such of them as are hereinafter particularly declared liable therefor, of the said invention of the complainant, described and secured to him by letters patent granted to the said complainant, as set forth in the bill of complaint in this cause, which use was unauthorized and an infringement and violation of the rights of the said complainant, under the said patent; that is to say, that the said defendant, Horace C. Silsby, either severally or jointly with others of said defendants, is liable for and chargeable with the sum of twenty-

three thousand six hundred and forty-four dollars and twenty-two cents ($23,644.22;) that of the said last-mentioned sum the said defendant, Washburn Race, is in like manner liable for the sum of eighteen thousand one hundred and eighty-two dollars and six cents ($18,182.06;) that of the said first-mentioned sum the said defendant, Edward Mynderse, is in like manner liable for and chargeable with the sum of fifteen thousand nine hundred and sixteen dollars and twelve cents; and that of the said first-mentioned sum the said defendant, Henry Henion, is liable for and chargeable with the sum of three thousand one hundred and fifty-four dollars and eighty-five cents; and that of the said first-mentioned sum the said defendant, Abel Downs, is liable for and chargeable with the sum of three thousand two hundred and sixty-seven dollars and thirty-seven cents.

And it is further ordered, adjudged, and decreed, and this court, by virtue of the power and authority therein vested, doth order, adjudge, and decree, that each of the said defendants pay to the said complainant the sum which such defendant is above declared and decreed to be liable for and chargeable with, and interest thereon, until such payment, or so much thereof as shall be necessary, together with the sums previously paid by the other defendants, to pay off and discharge the first-mentioned sum of twenty-three thousand six hundred and forty-four dollars and twenty-two cents, and interest thereon, from the entry of this decree; and the evidence in this cause not enabling the court now to determine with precision the rights of such defendants as between themselves, in respect to the sums for which each of such defendants is liable to contribute to the other, it is further ordered and decreed, that the sums paid by or collected from the property of each defendant, under this decree, shall be first applied in payment and discharge of the amount, if any, for which said defendant is solely liable, and next to the payment and discharge of such amount, if any, as the said defendant and the least number of the other defendants is liable, in such manner as to give to the said complainant his just and full rights against each and all said defendants; and if any controversy or question shall arise in respect to the proper application of any moneys so paid or collected, either defendant or party may apply to this court, upon affidavit and due notice to the adverse party in interest, for instructions in respect to the application thereof, or the stay of further executions against any single defendant, or any portion of such defendants, on the ground that the whole sum for which he is hereby made liable has been paid by himself and other defendants jointly liable therefor.

. And it is further ordered, adjudged, and decreed, that the said defendants pay to the said complainant his costs in this suit, to be taxed, with interest thereon from the taxation and allowance thereof until paid, and that he have executions for such costs, and for the sums above decreed to be paid him as aforesaid; but such execution against the defendants other than the said defendant, Horace C. Silsby, shall be only for such costs, and the amount for which such defendants are hereinbefore respectively declared to be liable.

S. NELSON.<br>N. K. HALL.

From this decree the complainant and respondents both appealed; but as the case of the respondents' appeal came on first for argument, it only is noticed. Both cases were decided together.

The case was argued in this court by *Mr. Keller* and *Mr. Blatchford* for the appellants, and by *Mr. Foote* in proper person for the appellee.

The counsel for the appellants directed their attention exclusively to the first claim of the patent, which was in fact the only one involved in the controversy. They denied—

1. The validity of the patent.
2. Its novelty.
3. Its utility.
4. The infringement and the liability of the defendants below.

The principal objection to the validity of the patent was the nature of the subject, which, it was contended, was exactly similar in its general character to the eighth claim of Morse, which this court decided to be invalid. (O'Reilly *v.* Morse, 15 How., 62.)

On the subject of the novelty of the invention, the counsel contended that the Saxton stove and Arnott improved stove were both prior in point of time, and in both of them the principle of the expansion and contraction of a metallic rod was applied to regulate a damper, by causing it to open and close according to the heat of the stove. But it is in vain to attempt to follow the counsel for the appellants in the various branches of their argument, which occupied nearly fifty pages of a printed brief.

*Mr. Foote* argued his own case, and thus explained his invention:

The complainant's invention consisted in the application of the expansive and contracting power of an inflexible metallic rod to regulate the heat of stoves. The great difficulty, in making this application, arose from the indispensable necessity of providing a detaching process. In the complainant's apparatus, after an increase of heat has entirely closed the damper, should the temperature from any cause continue to rise, the levers which communicate the action of the rod to the dampers disconnect themselves from it, and are free to move on to any extent to which the stove may be heated; and on the heat's returning to the same point, they will reconnect themselves with the damper and resume their appropriate functions. In like manner, should the fuel burn out and the heat continue to fall, after the damper has been fully opened, the levers will become detached, until the temperature shall have been again restored to the desired degree.

The office of a regulator is to produce an uniform heat; and to attain this object, it is necessary to give such increase of motion to the action of the rod, that a small change of heat— say from five to ten degrees—shall be sufficient to open or close the damper. Then, slight variations from the desired point, operating upon the damper, keep very nearly a uniform temperature, sufficiently so for all practical purposes. Were it constructed otherwise, it might be a thermometer, to show the degree of heat, but would not be a regulator, to control it. But the variations of temperature in a common stove exceed one thousand degrees. And unless provision was made for excessive changes, the apparatus would destroy itself. It could not be used for a *stove* regulator.

Several attempts had been made, previous to the complainant's invention, to apply the inflexible rod as a regulator to some other purposes, where it was subjected to such changes only as take place in water, or atmospheric air, and where a detaching process was not deemed to be essential. But we have no evidence that such attempts were ever successful, or were anywhere in practical use, or had ever been known beyond the books in which they are described. But to the stove, with its excessive variations, it does not appear that any one ever attempted its application.

The efforts previously made to produce a stove regulator were in a different direction. When two thin, flexible, and elastic slips of metal, of unequal expansibilities, are soldered, or otherwise attached together, a change of heat, affecting one more than the other, produces a flexure or curvature of the instrument. And as its elasticity enabled it to yield to any excessive change, and obviated the necessity of a detaching

process, its application to a stove was easy and apparent. But an insuperable difficulty was found in its use. When an elastic piece of metal is bent and heated, it takes a new form, or, as it is termed, "sets" into that position. The effect is gradual at moderate temperatures, and instantaneous at high. The instrument, besides, was necessarily made slight, in order to have the requisite flexibility. And although very useful for some purposes, its application to stoves was but a series of unsuccessful experiments.

All the difficulties were overcome in the complainant's application of the inflexible rod, and a really practical and effectual stove regulator was, for the first time, produced.

Mr. Justice NELSON delivered the opinion of the court.

This is an appeal from a decree of the Circuit Court of the United States for the northern district of New York.

The bill was filed in the court below by Foote against the defendants for an alleged infringement of a patent for an improvement in regulating the draught or heat of stoves. The bill, among other things, set out a trial at law between the parties upon the patent, and a verdict for the plaintiff; that the defendants since the trial and verdict continued their infringement, and had even increased the business of making and vending the complainant's stove regulators.

The complainant prayed for an account, and that the defendants be restrained by injunction from further infringements.

The defendants put in an answer, to which there was a replication. Afterwards feigned issues were ordered by the court, to try the questions whether or not the patentee was the first and original inventor of the application of the expansive and contracting power of the metallic rod, by different degrees of heat, to open and close the damper which governs the admission of air into a stove; and, also, whether or not he was the first and original inventor of the combination described in his patent, by which the regulation of the heat of a stove in which it might be used was effected.

The jury, after hearing the proofs upon these issues, returned a verdict in the negative. Afterwards the cause came before the court upon the pleadings and proofs, and the case made upon the trial of the feigned issues; and after hearing the arguments of counsel for the respective parties, held, that the patent was valid, notwithstanding the verdict of the jury on the feigned issues, and also that the defendants had been guilty of an infringement, and referred the cause to a master, to ascertain and report the profits which the defendants had derived by reason of said infringement. A most voluminous record

of testimony was taken before the master, and on the 17th June, 1854, he reported profits made by the defendants to the amount of $2,650. Thirty exceptions were filed to the report by the counsel for the complainant, and eighteen by the defendants, and were argued before the court. The view the court has taken of the case here renders it unimportant to refer particularly or specially to the decision of the court below upon each of these exceptions. After disposing of them, the court, agreeably to an earnest request of the counsel that the cause should not be again sent down to the master, but that the court, upon the evidence before it, should ascertain the amount of profits to which the complainant was entitled, entered upon the inquiry, and, after a laborious and minute examination of a record of some six hundred closely printed octavo pages of proofs, found an aggregate of profits to the amount of $17,980.40, and an aggregate of interest, averaged, of $5,663.82, making a total of $23,644.22. And on the 28th of August, 1856, a final decree was entered for the complainant against the defendants for this amount, with the costs to be taxed.

The cause is now before this court on appeal.

The difference of opinion among the judges of this court in respect to the amount of profits that should be allowed to the complainant, precludes the delivery of any written opinion on this branch of the case. The decree of the court below as to the amount, with the exception of the interest, is affirmed by a divided court. A majority of the court are of opinion that there was error in the allowance of interest on the profits found for the complainant. That amount, therefore, which is $5,663.82, must be deducted.

This court is also of opinion that the court below erred in awarding costs of the complainant against the defendants.

The first claim of the patentee in his patent was disproved by the prior construction and use of what is called in the case the Saxton stove, and no disclaimer was entered according to the requirements of the act of Congress 3d March, 1837. By the ninth section of that act it is provided, that when a patentee by mistake shall have claimed to be the inventor of more than he is entitled to, the patent shall still be good for what shall be truly and *bona fide* his own, and he shall be entitled to maintain a suit in law or equity for an infringement of this part of the invention, notwithstanding the specification claims too much. But in such case, if judgment or decree be rendered for the plaintiff, he shall not recover costs against the defendant, unless he shall have entered a disclaimer in the Patent Office of the thing patented, to which he has no right, prior to the commencement of the suit. There is also another

condition, namely, that the plaintiff shall not be entitled to the benefits of the section, if he has unreasonably neglected or delayed to enter the disclaimer.

The Saxton stove was produced on the trial of the feigned issues, after this suit had been commenced, and the question has been in controversy from thence to the present time, whether or not the arrangement, construction, and use of that stove, had the effect to disprove the first claim in the complainant's patent. It would be going too far, therefore, under these circumstances, to hold that the delay in entering the disclaimer was unreasonable within the meaning of the statute. A majority of the court is of opinion the delay has not been unreasonable within the meaning of the act, so as to defeat the recovery.

According to our conclusions, the decree of the court below is reversed as to the $5,663.82 interest, and also as to the costs allowed the complainant, and affirmed as to the residue, without costs to either party in this court; and that the case be remitted to the court below to enter a decree for the complainant against the defendants in conformity to this opinion, and proceed to the execution of the same.

Mr. Justice DANIEL and Mr. Justice GRIER dissented.

Mr. Justice DANIEL:

I concur entirely in the views expressed by my brother GRIER in this cause. I have always regarded the patent of the complainant void upon its face. I moreover consider the decree of the Circuit Court inconsistent with the claim of the complainant, unwarranted by any evidence in the cause, and most unjust and oppressive in its operation.

Mr. Justice GRIER dissenting:

Although I may occasionally differ in opinion with the majority of my brethren, my usual custom has been to submit to their better judgment, without remark. But in this case I feel constrained to protest against a decree which, in my opinion, does great and manifest injustice to the appellants. In doing so, it is proper that I thus state my reasons as briefly as possible, without an attempt at their full vindication by a tedious argument.

I. I believe the patent of complainant to be void on its face. The first claim is for the application of the "expansive and contracting power of a metallic rod, by different degrees of heat, to open and close a damper which governs the admission of air into a stove."

Now, this claim is false in fact. The patentee was not the first to make this application of the different degrees of expansion of metals to open and close a damper to a stove. The evidence is clear, explicit, and uncontradicted. Moreover, a jury has so found in an issue ordered in this case, and which verdict does not appear to have been set aside, although it was disregarded in the decision of the case.

This claim, even if it were true in fact, is clearly void in law, unless we agree to reverse the doctrine laid down by this court in the case of O'Reilly v. Morse, with regard to the eighth claim of Morse's patent. Besides, at the trial at law, the Circuit Court decided, in 1848, that this first claim could not be sustained. Yet, with ten years' judicial notice of this defect in his patent, the patentee has never amended it, entered a disclaimer, or attempted to avail himself of the privilege offered to him by the statute to rescue it from this charge, so destructive to its validity.

At common law, a patent having this infirmity was absolutely void. The patent act of 1836, section 13, provides a remedy, "where a patent is inoperative and void, by reason of a patentee's claiming in his specification as his invention more than he had a right to claim, and when the error has arisen through inadvertence or mistake."

In such a case, the patentee is permitted to surrender his patent, and, on payment of a further sum, have his patent reissued as corrected. But he was not permitted to recover any damage for infringement which occurred before the date of the reissued patent.

The patent act of 1837, section 7, gives a further privilege to the patentee of escaping the consequences of such a defect, "where his patent is too broad," by permitting him to enter a disclaimer, to be taken and considered as part of the original specification. It does not subject him to the costs of a new patent, nor to the forfeiture of antecedent damages, where the disclaimer is made during the pendency of a suit, but gives the defendant a right to object to its validity on account of unreasonable neglect and delay in filing it.

The ninth section of the same act provides for the case where "the patentee, in his specification, has claimed to be the inventor of any material or substantial part of the thing patented, of which he was not the first inventor, and provided it be distinguishable from other parts claimed in his patent. He is permitted to sustain his action for such part as is *bona fide* his own invention, forfeiting his right to costs where he has not filed a disclaimer before suit brought. But no person, bringing any such suit, shall be entitled to the benefits of this sec-

tion, who shall have unreasonably neglected or delayed to enter at the Patent Office a disclaimer, as aforesaid."

Now, the first claim of this patent does not come within the category of the ninth section. It is not for "a material and substantial part of the thing, distinguishable from other parts," but it is the case embraced in the seventh section, where the claim is void, because it is too broad.

Here the claim is for a monopoly of the expansive power of metals when applied to a stove, and this expansive power is a necessary agent in every claim for a combination in the patent.

The seventh section gives the patentee no right to recover at all, unless a disclaimer has been filed before trial or judgment. But, assuming that the privilege given by the ninth section be available to the patentee in this case, has he brought himself within the proviso? He has refused to avail himself of the privilege tendered to him by the law, and stands upon his patent. Notwithstanding the decision of the Circuit Court against this claim in 1848; notwithstanding the decision of this court in O'Reilly v. Morse; notwithstanding the verdict in 1853, declaring this claim false, no disclaimer has ever been entered. The pendency of the suit could be no reason, for the acts contemplate a pending suit. I cannot consent to say that this is not a case not only of unreasonable delay, but of stubborn rejection of the privilege offered by the law.

The case of O'Reilly v. Morse cannot be quoted as a precedent for this. There, Morse was admitted to be the original inventor of the application of an element of nature in his eighth claim; but the court decided that it was void, because it was too broad. Until that decision was read in court, the patentee had not the least reason to suspect his claim to be invalid. The decision was a surprise not only to him, but many others more learned in the law, who had carefully examined this claim, and advised the patentee that it was valid. In the present case, the patentee disregarded the judgment of a Circuit Court, a verdict of a jury, and judgment of this court, all of which warned him of the necessity of a disclaimer many years before final judgment.

I cannot consent to annul the statute altogether, and allow its benefits to a patentee who has stubbornly refused to submit to the conditions on which they are tendered.

II. The interlocutory decree of the court below does not condemn the defendants for infringing the third claim of the complainant's patent, on which alone it was decided on the trial at law the defendant was liable, and on which it is now attempted to justify this decree. What that decree is, must be judged by the record, and not by any parol explanations or contradictions of it.

The decree affirms—

1st. That the plaintiff was the first inventor of the *application* of the expansion and contraction of the inflexible metallic rod to the regulation of the heat of stoves.

2d. That any regulator in which the expansive and contracting power of an inflexible metallic rod, which expansion and contraction is produced by changes in the heat of the stove regulated, is *applied* to the damper to regulate the heat of the stove, is embraced within the principle of the invention claimed in the patent.

3d. That the defendants have made and sold regulators embracing that principle.

4th. That they must account for all regulators made and sold by them, which embrace that principle.

This decree charges the defendant with the infringement of the first claim of the patent, and is in conformity with the doctrines advanced in the charge of the court, on the issue tried before them, where the court thus define the claim of the patent:

"Now, in this case, as I understand the claim of the patentee, he claims the application of the principle of expansion and contraction in a metallic rod for the purpose of regulating the heat of a stove. That is the new conception which he claims to have struck out, and, although the mere abstract conception would not have constituted the subject-matter of a patent, yet, when it is reduced to practice by any means, old or new, resulting usefully, it is the subject of a patent, independently of the machinery by which the application is made."

Again, speaking of the first claim, he says:

"That claim is not for any mode or method of applying the expansion and contraction of the metallic rod to regulate the heat of the stove, but it is for the conception of the idea itself."

The interlocutory decree says, therefore, in effect, that the brass rod regulators, which the defendants admit in their answers that they made and sold, are infringements of the plaintiff's patent, *because* they embrace the principle of the application of the expansive and contracting power of an inflexible metallic rod to the damper of a stove. And the master is directed to take an account of all regulators that fall within the principle specified, no matter what their mechanical structure is or how they may differ from the regulators of which the plaintiff gives a description in his specification, and no matter whether they embrace or not anything that the plaintiff claims in either his second, his third, or his fourth claim. The plaintiff and the court below say, in effect, that they do not care for any proof as to whether any claim of the patent but the first is infringed; and that, as the defendants have been guilty of ap-

plying the expansive and contracting power of an inflexible metallic rod to open and close the damper of a stove in which changes in the heat of the stove produce the expansion and contraction, they must respond for all instances of such application.

The defendants are found guilty of infringing the first claim of the patent alone. No testimony was produced in the case to show that the Race patent infringed the third claim, and this fact was emphatically denied in the answer. Nor was the verdict and judgment at law put in evidence. And if it had been, it is no estoppel in equity to the defendants' putting the truth of that charge of the bill in issue in his answer. That verdict and judgment is put into the bill, as laying a proper ground for the granting of the preliminary injunction. Nor is it true, as now asserted, that this court has decided the question in the case of Silsby *v.* Foote, 14 Howard, 225.

On that trial the court below had instructed the jury, "that the defendants had not infringed the plaintiff's patent unless they had used all the parts embraced in the plaintiff's combination," and submitted the question to the jury whether there had been such infringement.

This instruction was adjudged by this court to be correct. The question whether the verdict was correct was not before this court, and could not have been decided.

The third claim which it is *now* alleged to be infringed is as follows: ·

"I also claim the combination *above described,* by which the regulation of the heat of a stove or other structure, in which it may be used, is effected."

The law requires that a patent should "particularly specify and point out the part, improvement, or combination, which the patentee claims as his own invention."

This claim does not specify the combination claimed, otherwise than by reference to the body of the specification where two distinct and complex combinations of numerous parts and devices are set forth.

After a full and fair trial, the jury have found, on an issue directed for that purpose, that the complainant was not the first and original inventor of the combinations set forth in this claim. But assuming that the court may disregard this verdict, and, without setting it aside or ordering a new trial of the issue, treat it as a nullity; and assuming, that without any testimony whatever being offered in the case, the court may, on view of the models, declare that the defendants' patent infringes that of complainant; and assuming the doctrine affirmed by this court in Silsby *v.* Foote, and McCormick *v.* Manny,

to be correct, "that defendant has not infringed plaintiff's patent unless he has used all the parts embraced in plaintiff's combination," I think it is clear to ocular demonstration that the defendants have not infringed either of the combinations claimed, unless we assert that all other combinations which produce the same result are equivalents for the first—a sophism which has just been rejected by this court in the case of McCormick *v.* Manny. A vindication or demonstration of the correctness of this conclusion could not be made intelligible unless by a long recital from the specification, and an exhibition of models or diagrams. The decree of the court below very properly does not assert or adjudge that defendants have used the complex combination of complainant's specification in any of its numerous parts save one—the expanding rod. On this point, therefore, my objection to the affirmance of any portion of this decree is, because it is founded on a claim admitted to be void in law, and is sustained by presuming, contrary to the record, that it was founded on a claim found by verdict in the case to be void in fact, and without any proof of infringement save ocular demonstration of the contrary.

III. But, assuming the verdict of 1848 between the present complainant and some of the defendants to be conclusive as an estoppel on all of them, notwithstanding the denial of the answer and the evidence of our senses, yet that verdict was between the complainant's patent and the Race patent, which is called the "brass-rod regulator," then used by the defendants. It had no reference whatever to the "expander patent," afterwards used by defendants. There is no charge in the bill that the combination of this last patent infringes the complainant's patent. There was no evidence offered to prove such to be the fact. The master's report declares it not to be an infringement of the combination of the third claim—it is patent to the eyes of any one who will examine the models, that it does not; yet, because it used the expansive power of metals, the defendants are mulcted in the sum of $7,033 damages, not for invading the complainant's rights, but for evading his patent by a patented invention for a different combination. I forbear to make any further remarks on this enormity, because it is affirmed by the division of the court, and their opinion has, happily, not been compelled to defend it by argument. As it is without precedent, so neither can it be cited as such hereafter.

IV. Lastly, after a very long and laborious investigation, the master has found that the profit of making and vending the machine charged as an infringement, is ten cents on each regulator. This finding of the report was excepted to by the

complainant. The court overruled the exception and confirmed the report on this point; and, nevertheless, assess the damage at *ten-fold the amount.* By what process of reasoning or arithmetic, on what facts or what principle of law, this astonishing and ruinous decree is founded, it does not undertake to explain. I can conceive of no other ground than that the court have calculated the whole profit of the stove, as was done in the case of Seymour *v.* McCormick, and overruled by this court.

Believing, therefore, that the decree of this court, so far as it affirms any portion of the decree of the Circuit Court, is not only unsustained by evidence, but contrary to the law as heretofore established by this court, I cannot give my assent to it.