## JOHNSON *v.* HARMON.

1. A bill of exceptions cannot be taken on the trial of a feigned issue directed by a court of equity, or, if taken, can only be used on a motion for a new trial made to that court.

2. As the verdict may or may not have been the ground for the decree, an appeal from the latter cannot be made to turn on the judge's rulings at the trial of the feigned issue, but must be decided upon the whole case, pleadings, evidence, and verdict, giving to the latter as much effect as it is worth.

APPEAL from the Supreme Court of the District of Columbia. The facts are stated in the opinion of the court.

Argued by *Mr. A. G. Riddle* for the appellant.

The court declined to hear *Mr. M. Thompson* for the appellee.

MR. JUSTICE BRADLEY delivered the opinion of the court.

This was a bill in equity, involving, amongst other questions, the validity of a trust deed given by the complainant (the appellee here) to secure certain notes. The complainant charges in his bill that he was so intoxicated when he executed the deed and notes as to be incapable of understanding what he was doing. The court below, after considerable testimony had been taken, directed an issue to try the question whether the complainant, at the time of the execution of the deed of trust and notes, was capable of executing a valid deed or contract. The issue so directed was tried, and resulted in a verdict for the complainant; namely, that he was not capable of executing a valid deed or contract. The defendants took a bill of exceptions to the charge given by the judge who tried the issue, which was allowed, and signed by him. The cause afterwards

came on to be heard upon the exceptions, and they were over-ruled. Subsequently a final hearing was had upon the pleadings, evidence, and verdict, and a decree was rendered for the complainant, directing the trust deed and notes in question to be vacated and set aside. From that decree this appeal was taken, and the only errors assigned are to the charge given by the judge to the jury on the trial of the feigned issue.

This is totally inadmissible. A bill of exceptions cannot be taken on the trial of a feigned issue directed by a court of equity, or, if taken, can only be used on a motion for a new trial made to said court. 2 Dan. Ch. Pr. (3d Am. ed.) 1106; *Armstrong* v. *Armstrong*, 3 Myl. & K. 52; *Ex parte Story*, 12 Pet. 343. See the cases on new trials on feigned issues collected in 3 Graham & Waterman on New Trials, 1553, &c. The issue is directed to be tried for the purpose of informing the conscience of the Chancellor, and aiding him to come to a proper conclusion. If he thinks the trial has not been a fair one, or for any other reason desires a new trial, it is in his discretion to order it. But he may proceed with the cause though dissatisfied with the verdict, and make a decree contrary thereto, if in his judgment the law and the evidence so requires. A decree in equity, therefore, when appealed from, does not stand or fall according to the legality or illegality of the proceedings on the trial of a feigned issue in the cause; for the verdict may or may not have been the ground of the decree. It is the duty of the court of first instance to decide (as was done here) upon the whole case, pleadings, evidence, and verdict, giving to the latter so much effect as it is worth. An appeal from the decree must be decided in the same way, namely, upon the whole case, and cannot be made to turn on the correctness or incorrectness of the judge's rulings at the trial of the feigned issue.

*Decree affirmed.*

MR. JUSTICE CLIFFORD concurred in the judgment of the court, and delivered the following opinion: —

Difficulty attends the effort to define, with clearness and precision, what degree of mental unsoundness in a grantor is sufficient, in contemplation of law, to render him incapable of giving a valid and effectual deed of conveyance. Confirmed

insanity which deprives a person of mental capacity to distinguish between right and wrong, in respect to the act in question, renders the person irresponsible for such an act, though criminal, and disqualifies him to enter into a contract or to execute a valid instrument to convey real or personal estate.

Deeds made by such a person are at least voidable; but mere weakness of understanding is not of itself any objection to the validity of a contract, if the capacity remains to see things in their true relations, and to form correct conclusions in respect to the subject-matter of the contract.

Men of such understanding are held responsible for criminal acts, and they may make valid contracts; but when it appears that a contractor or grantor has not strength of mind and reason sufficient to understand the nature and consequences of his act in making a contract or in executing a deed, the instrument may be avoided, on the ground of the mental incapacity of the party to contract or to execute the conveyance.

Both minds must meet in such a transaction; and if one is so weak, unsound, and diseased that the party is incapable of understanding the nature and quality of the act to be performed, or its consequences, he is incompetent to assent to the terms and conditions of the instrument, whether that state of his mind was produced by mental or physical disease, and whether it resulted from ordinary sickness, or from accident, or from debauchery, or from habitual and protracted intemperance. *Dennett* v. *Dennett*, 44 N. H. 535; 2 Kent, Com. (12th ed.) 45.

Enough appears to show that the complainant owned lot numbered twenty-six, described in the record, with the two dwelling-houses erected thereon; that on the 3d of February, 1871, he indorsed two notes of that date, each for the sum of three hundred dollars, payable one in five and the other in six months from date, with ten per cent interest, to the order of the first-named respondent; and that he, on the same day, executed and delivered to the other respondent a deed of conveyance of the houses and lot in trust to suffer and permit the complainant to occupy and enjoy the premises until some default made in the payment of those two promissory notes, with power in the trustee, in case of default of payment, to proceed, on the request of the payee of the notes, to sell the

premises.    Default of payment of the first note was made, and complainant alleges, in his original bill of complaint, that the trustee threatens to sell the premises.    Subsequently he, by leave of court, filed an amended bill of complaint.

Reference will only be made to the amended bill, as the matters in controversy arose out of charges contained in that pleading, which are as follows : That when the complainant executed the deed of trust and the notes he was so intoxicated that he did not know what he was doing; that he did not know that he was making his property liable for the notes, or that he was incurring any obligation to pay the notes; that the trustee, on the 21st of September last, sold the property at public auction to the payee of the notes, and that he claims the property as his own, and has given the complainant notice to leave the premises.

Based upon these allegations, and others not necessary to be reproduced, the complainant prays as follows : 1. That the sale to the payee of the notes may be annulled and set aside. 2. That the trustee may be enjoined and restrained from making any conveyance of the premises to any person.  3. That if the trustee has made any conveyance of the same, that the conveyance may be annulled and set aside.  4. That the deed of trust may be decreed null and void.  5. That the payee of the notes may be enjoined and restrained from taking possession, or in any way interfering with the premises or with the complainant, or any tenant thereof, in the free use and enjoyment of the property ; and for general relief.

Process was issued; and the first-named respondent appeared and filed a separate answer, which consists of a denial of every allegation of the bill of complaint, together with two affirmative averments :  1. That the complainant several times asked for extension of time for the payment of the notes.  2. That he, the respondent, saw no signs of intoxication in the complainant at the time the notes and deed of trust were executed, and that he never set up any such pretence before the first note was sued.

Proofs were taken, and it appears that the cause was submitted to the court upon the pleadings and evidence without argument.    Before decision, the court directed that a feigned

. issue should be tried by a jury in the law court of the District, as follows, to wit: whether or not the complainant at the time the deed of trust and notes were executed was capable of executing a valid deed or contract. .

. Pending that proceeding, the complainant filed in the equity court a supplemental bill, in which he alleged that the jury empanelled to try the feigned issue failed to agree, and that the issue was still pending in the law court; that the payee of the notes brought suit against him before a justice of the peace to obtain possession of the premises; that he recovered judgment in the case, and that the present complainant appealed the same to the Supreme Court of the District; that the appellee in that suit, notwithstanding the pendency of the feigned issue in the court of law, caused the appeal from the judgment rendered by the justice of the peace to be docketed and affirmed, without evidence or inquiry into the merits. Wherefore he prayed that the writ of possession might be annulled and set aside, and for an injunction.

Instead of that, the court first issued a summons commanding the respondents to appear and answer the allegations of the supplemental bill. Service being made, the first-named respondent appeared and filed an answer, in which he admits that the complainant did set up the defence of intoxication in the suit on the note; that he, the present respondent, did obtain judgment for possession; but he avers that the appeal was never perfected, and that the judgment of the justice of the peace was affirmed. Hearing was had; and the court awarded an injunction restraining the respondent from interfering with the property, but requiring the complainant to give bond to pay rent, in case the final decree should be in favor of the respondent.

Those matters being adjusted, the parties went to trial upon the feigned issue in the court of law, and the jury found that the complainant at the time he signed the deed of trust and notes was not capable of executing a valid deed or contract. Exceptions were filed by the respondent as in a common-law action, in which is given what purports to be the testimony introduced in the trial of the issue.

Evidence was offered by the plaintiff tending to prove that at and after the time of the making of the deed and notes, he,

the plaintiff, was in the habit of using intoxicating liquors to excess ; that he was more or less under such stimulants all the time; that at the date of the deed he had been drinking freely ; and the bill of exceptions shows that several witnesses testified that they did not consider him fit to do business. Among others, the makers of the notes secured by the deed of trust were called, and they testified that they were present at the making of the deed and notes ; that the complainant was very much intoxicated, so much so that they did not consider him fit to transact business or capable of executing a deed or contract. Testimony to the same effect was given by another witness who was also present when the deed and notes were executed.

Support to that theory, of a decided character, was also derived from the testimony of a physician, who testified that he saw the party almost daily about that time, and "that he was not competent to contract at the time of making the deed," in which statements he was confirmed by other witnesses called during the trial.

Opposing evidence was introduced by the defendant. In the first place, he called the trustee who prepared the deed and notes, and he testified that the parties, including the makers of the notes, came to his office to have the deed prepared ; that he informed him that he must have the title-deed of the plaintiff to obtain the description of the premises ; that the plaintiff and the payee of the notes left his office for that purpose, and returned with the title-deed ; that he prepared the trust-deed, read it over to the plaintiff, and explained it to him ; that he expressed himself satisfied with it, and signed it. He also called the magistrate who took the acknowledgment of the grantor ; and both of these witnesses testified that they thought that the grantor was sober. Witnesses were also examined by the defendant, whose testimony tended to prove that the plaintiff said nothing of the deed being invalid because of his intoxication before the property was sold, and that he signed a paper six weeks afterwards, agreeing to the assignment of the lease for which the notes secured by the deed of trust were given.

Three exceptions were taken by the defendant to rulings of the presiding justice in refusing to instruct the jury as requested,

as follows: 1. That, to set aside a deed or contract on account of drunkenness, it is not sufficient that the party is under undue excitement from liquor. It must rise to that degree which may be called excessive drunkenness, where the party is utterly deprived of his reason and understanding. 2. That the jury must find for the defendants, unless they believe that the plaintiff was in such a state of intoxication as not to know what he was doing when he signed the deed in controversy. 3. That, if the jury believe from the evidence that the plaintiff knew that he was signing a deed of trust upon his property, they must find for the defendant.

By the record, it appears that the judge held that if the word "utterly" in the first prayer as here reported was intended to express an entire loss of reason in all respects, it was not good law; but if it meant that the defendant must be incapable of understanding the terms and conditions of the deed of trust, in order to avoid it, then it was good law; and, so modified, the instruction was given to the jury. That the other two requests were granted subject to the following modification: that it was not sufficient to make the deed a valid one for the plaintiff to know that he was signing a deed of trust on his property; but he must have been in such a condition of mind as to be able to know and understand the terms and condition of the deed. That it is not necessary, in order to render the deed of the plaintiff invalid, that, at the time of its execution and acknowledgment, he was entirely demented by intoxicating drink; but his act will be rendered invalid if he was in such a condition of mind that he could not comprehend what were the terms and condition of the instrument.

Subsequently the parties were heard on the exceptions in the equity court, and the exceptions were overruled. Neither party moving for a rehearing or a new trial, the cause came up for consideration in the Supreme Court of the District, and the court affirmed the decree of the Chancellor, overruling the exceptions of the defendant to the rulings of the justice presiding at the trial before the jury.

All interlocutory matters having been disposed of, the cause came on to be heard upon the original bill, the amended and supplemental bills, the answers of the respondent, the verdict

of the jury, the decree in general term overruling the exceptions
to the ruling of the justice in the trial of the feigned issue; and,
upon consideration thereof, it is ordered, adjudged, and decreed
that the deed of trust and the indorsements of the complainant
on the notes are hereby vacated, annulled, and set aside, and
for the other relief, as more fully set forth in the interlocutory
decree exhibited in the record, which was in all things affirmed
by the final decree of the Supreme Court of the District, from
which the respondent appealed to this court.

Erroneous rulings of the judge presiding in the trial of
feigned issues are the proper subject of a motion for new trial
before the Chancellor who formed the issues and sent them to
the law court for trial, but they do not of themselves constitute
a ground of appeal to this court. Appeals here can only be
sustained where the decree is final, and such an appeal brings
up the whole case. Where exceptions are taken on the trial
of an issue out of chancery, and made part of the record, the
certificate to the verdict by the court of law is a certificate to
the whole record, and the exceptions, though not expressly
certified, become a part of the chancery record. 2 Dan. Ch.
Pr. (4th Am. ed.) 1120; *Watkins* v. *Carlton*, 10 Leigh, 560.

Issues of the kind are directed to be had at law, to inform
the conscience of the Chancellor as to doubtful facts in contro-
versy. *Harding* v. *Handy*, 11 Wheat. 125; *Goodyear* v. *Rubber
Company*, 2 Cliff. 351.

Power to grant a new trial of the issues is unquestionably
vested in the Chancellor; but, in determining that matter,
the practice is to consider the whole of the evidence given at
or before the trial and what has since become known to the
court; and the rule is, that if the court is satisfied that full and
complete justice has been done between the parties, the motion
for new trial will be denied. 2 Dan. Ch. Pr. 1121; *Patterson*
v. *Ackerson*, 1 Edw. Ch. 102.

Applications for new trial in an issue sent out of chancery
must be made to the court of chancery, after the proceedings
are certified back from the court of law. 1 Barb. Ch. Pr. (2d
ed.) 456; *Van Alst* v. *Hunter*, 5 Johns. Ch. 153; *Birdsall* v.
*Patterson*, 51 N. Y. 43.

Such an issue is directed, as before remarked, to inform the

conscience of the Chancery Court, and the application for new trial must be made to the Chancellor; nor will the Chancellor grant a new trial for every error of the judge presiding at the trial of the issues, if, on the whole facts, he is satisfied that the result is correct. *Apthorp* v. *Comstock*, 2 Paige, 486–488; *Silsby* v. *Foote*, 20 How. 385; *Clayton* v. *Garrington*, 33 Barb. 145.

Instructions given in the trial of such an issue are not the proper subject of appeal to this court, the rule being that this court can only examine the final decrees of the equity court. *Brockett* v. *Brockett*, 3 How. 691; *McLaughlan* v. *Bank*, 7 id. 227.

Suppose that is so, still it is insisted by the appellant that the evidence reported in the record is sufficient to show that the final decree of the court below is erroneous.

Imbecility of mind is not of itself sufficient to set aside a contract, when there is not an essential privation of the reasoning faculties or an incapacity of understanding and acting with discretion in the ordinary affairs of life. Weakness of understanding may be a material circumstance in every case where the charge is that one of the contracting parties has taken undue advantage of the other, or has been guilty of unfair practice or imposition. Formerly, it was considered that intoxication was no excuse for the non-fulfilment of a pecuniary liability, and that it constituted no sufficient plea in avoidance of a contract; but it is now settled, says Chancellor Kent, according to the dictate of good sense and common justice, that a contract made by a person so destitute of reason as not to know the consequences of his contract, though his incompetency be produced by intoxication, is at least voidable. 2 Kent, Com. (12th ed.) 451.

Much consideration was given to that question in the case of *Barret* v. *Burton*, 2 Aik. (Vt.) 167, and it was there decided that an obligation executed by a man deprived of the exercise of his understanding, by intoxication, was voidable by himself, though the intoxication was voluntary and not procured by the circumvention of the other party. *Young* v. *Stevens*, 48 N. H. 136.

Other courts and text-writers of the highest authority adopt

that view, and support the proposition without qualification, except where the contract was for necessaries, or where the intoxicated party keeps the goods and uses the same as his own property after he becomes sober.   It appears to have been at one time considered, says Chitty, that an agreement was not void even in equity, although it was entered into by the party charged thereon while he was in a state of absolute intoxication, unless such intoxication had been occasioned by the contrivance of the other party, or some positive fraud had been practised; but it would seem, says the author, that, on principle, such a degree of intoxication as entirely deprives a party of the use of his reason must avoid an engagement entered into by him while in that state, even although it was produced by his own folly, and although no actual fraud was intended or practised; giving the same reason for the conclusion given at a much earlier period, that " such a person had no agreeing mind," which of itself is sufficient to show that the intoxicated man cannot be held bound to the alleged contract.   Chitty on Contr. (10th ed.) 137; *Pitt* v. *Smith*, 3 Camp. 33; *Fenton* v. *Holloway*, 1 Stark. 126.

Beyond doubt, these authorities support the proposition advanced; and the same writer adds, that it is now settled that where a party, when he enters into a contract, is in such a state of intoxication as not to know what he is doing, and particularly when it appears that this was known to the other party, his contract is at least voidable.   *Matthews* v. *Baxter*, Law Rep. 8 Exch. 132; *Molton* v. *Camroux*, 2 Exch. 501.

When intoxication goes so far as absolutely to destroy the reason, it is evident that it renders the person in that state incapable of contracting so long as it continues, since it renders him incapable of giving consent.   1 Poth. on Obl., by Evans, p. 29.

Modern text-writers treat of contracts with intoxicated persons under a distinct head; and Addison says, that a party who makes a contract in such a state of intoxication as not to know what he is doing, cannot be compelled to perform the contract by the other party who knew him to be in that state, and that a man who takes an obligation from another so circumstanced is guilty of actual fraud.   Examples are given which support

the proposition; but the author holds that a contract made by a man in a state of intoxication is voidable only and not void, and therefore the intoxicated man may, if he pleases, when he becomes sober, ratify it, and that it will then be binding Addison on Contr. (3d Am. ed.) 285.

Courts of justice in repeated instances have decided in the same way. Reference will be made to a few such cases, with the remark, that the number might be greatly increased.

Undoubtedly, said the Supreme Court of Pennsylvania, the total drunkenness of the maker of a note when he executed it, if known to the payee, rendered it void as to the latter; and they remark, that the old rule that a man should be held liable upon a contract made by him when in a state of intoxication, on the ground that he should not be allowed to stultify himself, has been long since exploded, and that it is now settled, according to the dictate of good sense and common justice, that a contract made by a person so destitute of reason as not to know the consequences of his contract, though his incompetency be produced by intoxication, is void as between the parties. *Bank* v. *McCoy*, 69 Penn. St. 207.

Except where the contract is for necessaries, the Court of Exchequer held, that where the right of action is grounded upon a specific, distinct contract, requiring the assent of both parties, and one of them is incapable of assenting, as in consequence of intoxication, in such a case there can be no binding contract. Parke, B., said, where the party, when he entered into the contract, was in such a state of drunkenness as not to know what he is doing, and particularly when it appears that this was known to the other party, the contract is void altogether, and he cannot be compelled to perform it; adding, that a person who takes an obligation from another under such circumstances is guilty of actual fraud. *Gore* v. *Gibson*, 13 M. & W. 625.

In regard to drunkenness, says Greenleaf, it is now settled that incapacity from that cause is a valid defence to an action upon the contract made while under its influence, as well where it was voluntary and by the fault of the defendant as where it was caused by the fraud or procurement of the plaintiff. 2 Greenl. Evid. (12th ed.) sect. 374.

Whether the intoxication was so great as to suspend or destroy the power of intelligent assent, is a question of fact. Nor does it make any difference that the drunkenness was voluntary and wilful, for the legal theory is, that, without the capacity of giving a deliberate assent, no contract can be made. Story on Contr. (5th ed.) 86. But the author adds, that intoxication only renders the contract voidable, not void; so that the party intoxicated may, upon recovering his understanding, adopt it, when it will become obligatory. *Reinskopf* v. *Rugge*, 37 Ind. 207.

Contracts of the kind are voidable only, not void, and therefore capable of being ratified when the party becomes sober. *Molton* v. *Camroux*, 2 Exch. 501; *Matthews* v. *Baxter*, Law Rep. 8 Exch. 132.

Apply these rules to the facts of the case as disclosed by the proofs, and it is clear that there is no error in the record.