## Case No. 5,582.

### GOODYEAR v. PROVIDENCE RUBBER CO.

[See Case No. 5,583.]

## Case No. 5,583.

### GOODYEAR v. PROVIDENCE RUBBER CO. et al.

[2 Cliff. 351; 2 Fish. Pat. Cas. 499.] [1]

Circuit Court, D. Rhode Island. Nov. Term, 1864.

PATENTS — EQUITY—FEIGNED ISSUE—VERDICT OF JURY—STATE REGULATIONS — PRACTICE IN FEDERAL COURTS—BILL FILED BY EXECUTOR—SPECIFICATION OF PATENT—REISSUE—ACT OF MARCH 3, 1837—PATENTABILITY OF BOTH PRODUCT AND PROCESS — DECISION OF COMMISSIONER OF PATENTS — PROCEEDING TO SET ASIDE PATENT — FRAUD.

1. The general rule is, that an interlocutory order for issues to a jury in an equity suit will not be directed until the proofs are taken and publication has passed.

2. It is not indispensably necessary, as a matter of law, in any case, that any question in an equity suit in a federal court should be sent to a jury.

3. When feigned issues are directed by the court sitting in equity, it is generally done upon the ground that the evidence in the record is not of a character, or not sufficient to afford the means of a satisfactory conclusion; but the verdict of the jury is only advisory, and may be set aside or even overruled.

[Cited in Garsed v. Beall, 92 U. S. 695; Johnson v. Harmon, 94 U. S. 378.]

4. State regulations to the extent that they define the rules of property are regarded as furnishing the rule of decision, but they do not control or affect the process or practice of the federal courts.

5. The equity practice of the federal courts, when not controlled by an act of congress or the rules prescribed by the supreme court, is in general regulated by the chancery practice of the parent country as it existed prior to the adoption of what are called the "New Rules."

[Cited in Evory v. Candee, Case No. 4,583; Griswold v. Bragg, 48 Fed. 520.]

[Cited in Griswold v. Bragg, 48 Conn. 579.]

6. In this case the bill of complaint was not founded on the title of the original patentee, but on the derivative title of the first-named complainant, to whom, as executor of the patentee deceased, the patent was reissued; therefore, objection to the right of the complainants to maintain their bill, because only one of the persons named as executors in the last will and testament of the original patentee was made party to the bill, cannot be sustained.

[Cited in Carew v. Boston Elastic Fabric Co., Case No. 2,397; Thomas v. Shoe Mach. Manuf'g Co., Id. 13,911.]

[See note at end of case.]

7. The reissued patent, under these circumstances, is a new contract between the government and the executor, since the decease of the original patentee.

[See note at end of case.]

8. Where other persons named as executors did not join with the complainant in proving the will of an original patentee, or in the surrender or reissue of the original patent, they need not be made parties to a bill of complaint for the infringement of the said reissued patent.

[Cited in Grover & B. S. M. Co. v. Florence S. M. Co., 18 Wall. (85 U. S.) 579.]

9. The objection to the maintenance of a bill in equity founded on letters-patent, that the specification did not set forth the invention in such full, clear, and exact terms as would enable any person skilled in the art to practise the invention, is not open to the defendants, when no such defence is set up in their answer, and the record shows that application was made to the court to amend in that particular.

[Cited in Jennings v. Pierce, Case No. 7,283.]

10. Under the fifth section of the act of March 3, 1837 [5 Stat. 10], when a patent is properly returned for correction and reissue, the patent office is authorized to reissue the original in several parts, if the patentee desires it, and pays the additional sum or sums required by law.

[Cited in Fassett v. Ewart Manuf'g Co., 58 Fed. 365.]

11. A new product or article of manufacture, and the process by which the same is produced, may be the proper subjects of separate patents.

[Cited in Merrill v. Yeomans, Case No. 9,472; Milligan & Higgins Glue Co. v. Upton, Id. 9,607. Applied in Badische Anilin & Soda Fabrik v. Hamilton Manuf'g Co., Id. 721; Tucker v. Dana, 7 Fed. 214. Cited in Judd v. Fowler, 10 C. C. A. 100, 61 Fed. 821.]

[See note at end of case.]

12. An inventor claimed "curing caoutchouc or India-rubber, by subjecting it to a high degree of artificial heat"; also "curing the compound of India-rubber, sulphur, and a carbonate or other salt or oxide of lead, by subjecting the same to the action of artificial heat"; but in the descriptive part of the specification declined to limit himself to the exact compound last named, and set out others. A reissue of the patent claimed "a combination of India-rubber with sulphur, with or without other ingredients, chemically altered by the ap-

[1] [Reported by William Henry Clifford, Esq., and by Samuel S. Fisher, Esq., and here compiled and reprinted by permission.]

plication of heat." It was *held*, that the latter claim, when construed in the light of the description, was not invalid by reason of embracing more than the former.

[Cited in Cahart v. Austin, Case No. 2,288; Carew v. Boston Elastic Fabric Co., Id. 2,- 397; Smith v. Merriam, 6 Fed. 718.]

[See note at end of case.]

13. The reissued patent having been issued in two parts, one claiming a process and the other the product thereof, the claim for the process, when construed in view of both the earlier and later specifications, was *held* not to be broader than the corresponding claim in the original, in so far as it claimed mixing with the rubber other ingredients than sulphur; but the second claim of the reissue was held void, because it included not only India-rubber when compounded with sulphur and subjected to artificial heat but other vulcanizable gums,—no other gums having been described in the original patent nor in the one to which the claim was appended.

[Cited in Carew v. Boston Elastic Fab. Co., Case No. 2,397; Jones v. Sewall, Id. 7,495; Wonson v. Peterson, Id. 17,934; Atwood v. Portland Co., 10 Fed. 287.]

[See note at end of case.]

14. The commissioner of patents has full power to examine and decide upon an application for reissue; and as there is no provision made for an appeal, the decision must in general be regarded as conclusive in all collateral proceedings.

[Cited in Tucker v. Burditt, Case No. 14,- 216; In re Day, 27 Fed. 680.]

15. In a proceeding between the government and a patentee to set the patent aside, or in an application for an extension, proof of fraud is conclusive, but it must be clear and satisfactory.

16. In this case, proof that the extension was obtained by fraud, was *held* insufficient; but if it had been full, it would not have availed the respondents, because they were shown to have consented to the acts complained of.

[Cited in Seymour v. Osborne, 11 Wall. (78 U. S.) 543.]

17. After the originality of Charles Goodyear's invention has been repeatedly affirmed by the circuit courts of the United States, and there has been no effort made to call the decisions in question, under the circumstances of this case, those decisions were followed by this court.

18. Construction of the license under which the defendants claimed to manufacture the articles covered by the complainants' patents.

[19. Cited in Kelleher v. Darling, Case No. 7,653, to the point that patents, in certain cases, may be good in part and void in part, the rule being that whenever a patentee, through inadvertence, accident, or mistake, and without any fraudulent or deceptive intention, has claimed more than that of which he was the original inventor, his patent shall be valid for all that part which is truly and justly his own, provided the same be a material or substantial part of the thing patented.]

Bill in equity to recover damages for an alleged infringement of certain letters-patent, and praying for an account and for an injunction. The complainants were Charles Goodyear, executor of the last will and testament of Charles Goodyear deceased, the Union Rubber Company, a corporation created by the laws of the state of New York, and the Phoenix Rubber Company, a corporation created by the laws of the state of Connecticut. The respondents were the Providence Rubber Company, a corporation created by the laws of Rhode Island, Augustus O. Bourn, William W. Brown, and Edwin M. Chaffee, who were also citizens of the last-named state. The patents set up in the bill of complaint were, the original patent to Charles Goodyear, deceased, of the 15th of June, 1844 [No. 3,633], and the patent for the same invention, reissued to the original patentee of the 25th of December, 1849 [No. 156], which was further duly extended by the commissioner of patents on the 15th of June, 1858, for the additional term of seven years from the time of such extension. The bill of complaint also alleged, that the original inventor died on the 1st of July, 1860, and that the extended patent was duly surrendered and reissued to Charles Goodyear, executor, on the 20th of November, in the same year [No. 1,085].

The complainants claimed to be the sole and exclusive licensees of the original patentee, for the manufacture and sale of certain goods particularly enumerated in the bill of complaint; and their title to the exclusive right so claimed was alleged to be derived from three licenses exhibited in the record, which were duly executed by the original patentee during his lifetime. The licenses referred to were, first, the license granted to the Naugatuck India-Rubber Company, under date of July, 1844, which, as the complainants contended, was an exclusive license, conferring the right to manufacture everything (save the articles therein excepted) that could be made out of India-rubber. Secondly, the license to Jonathan Trotter, dated the 5th of February, 1847, which was for the manufacture of wearing apparel of every name and description for men and boys, excepting boots and shoes, bathing-caps, gloves, and mittens. Thirdly, a license to the firm of William Rider and Brothers, on the 1st of July, 1848, which was for the manufacture of army and navy equipments, and various other articles therein specified. The record contained stipulations which admitted the granting of the several patents set up in the bill of complaint, and the execution and assignment of all the licenses under which the corporation complainants claimed the exclusive right to manufacture and sell rubber goods. The answer was filed on the 1st of December, 1862, denying that Charles Goodyear deceased was the original and first inventor of the improvements described in the original patent; and also denying that the respondents had been guilty of any infringement, as alleged in the bill of complaint. Special defences were also set up in the answer, and before the proofs were all taken, the respondents appeared and moved the court to pass an order for feigned issues or issues of fact to be tried by a jury. The parties were heard upon the motion at the time it was

presented, and the court refused to pass the order, but postponed the motion to be further heard with the merits. The refusal to grant the motion was placed upon the ground that, under the circumstances of this case, it was premature.

The defendants claimed to manufacture under a license to Edwin M. Chaffee, of date June 25, 1846, which was expressed to be "a free license to use the said Goodyear's gum-elastic composition for coating cloths, for the purpose of japanning, marbling, and variegate japanning, together with all the rights to make and dispose of the aforesaid japanned and marbled or variegated cloths, in and so far as the said Charles Goodyear has obtained any rights, patents, or privileges, and in virtue of all his inventions, patents, and improvements made in the manufacture of India-rubber or gum-elastic goods, and which shall be made hereafter by the said Charles Goodyear. And in virtue of all letters-patent, or patent rights of the United States of America, granted to and belonging to, and which shall be granted to and belonging to the said Charles Goodyear, for any and all inventions and improvements in the manufacture of India-rubber goods." It was insisted by the complainants that the license of the defendants was intended to be restricted to the manufacture of boots and shoes, and that the license granted to certain of the complainants (before referred to) was exclusive in the grant of the right to make army and navy equipments, ponchos, blankets, bulbs for syringes, and certain other enumerated articles. The other points in dispute, as to the effect and construction of the licenses held by both parties, may be understood from the discussions of counsel and the opinion of the court.

B. R. Curtis, C. S. Bradley, Wingate Hayes, and J. Hervey Ackerman, for complainants.

The Union India-Rubber Company and the Phoenix Rubber Company, being licensees under Goodyear's patent, have the right to join the name of his representative in a suit brought to protect their rights as licensees. Goodyear v. McBurney [Case No. 5,574]; Goodyear v. Bishop [Id. 5,558]. The question whether Charles Goodyear, Jr., is executor or not, can only be raised by a plea in abatement. Childress v. Emory, 8 Wheat. [21 U. S.] 642; Kane v. Paul, 14 Pet. [39 U. S.] 33. The reissue of letters-patent to an executor, by the commissioner of patents, is conclusive that such executor has been duly appointed. Woodworth v. Hall [Case No. 18,-016]. If the licenses of the complainants are exclusive, their right to stop the defendants is complete. Whether this patent was fraudulently extended or not cannot be inquired into in this suit. That is a question exclusively between the sovereignty granting the extension and the patentee. Field v. Seabury, 19 How. [60 U. S.] 324, 332; Gibson v. Gifford [Case No. 5,395]. Letters-patent are

matter of record, and the general rule is that they can only be avoided in chancery, by a writ of scire facias sued out on the part of the government or by some individual prosecuting in its name. This is the settled English course sanctioned by numerous precedents, and there is no statute or precedent in this country establishing a different course. Jackson v. Lawton, 10 Johns. 24. And this is true, though it were issued by mistake, or obtained by fraud or misrepresentation. People v. Mauran, 5 Denio, 389, 398. Though these citations are made from cases respecting patents for lands, it is submitted the same principles must apply and govern the case of an invention or discovery; because in both cases the patent is a grant made by the government or sovereignty to some person or persons of some privilege, property, or authority. Both are issued in the name of the United States by like authority and in the same manner. The decision of the commissioner of patents in granting an extension is conclusive; such was the intention of the act allowing him to extend a patent. Colt v. Young [Case No. 3,032]. As the commissioner's decision was made by a special tribunal, with full powers to examine and decide, and as there is no provision for an appeal to any other jurisdiction, the decision is final within the law. Foley v. Harrison, 15 How. [56 U. S.] 433, 448; Patent Laws 1836, c. 357, § 18; Philadelphia & T. R. Co. v. Stimpson, 14 Pet. [39 U. S.] 458, 459. The action of the commissioner of patents in reissuing a patent, which is strictly an ex parte proceeding, is not inquirable into, unless a clear case of fraud is made out. Much less is it, then, in the case of an extension which in its very nature is a judicial proceeding, providing for public notice (of sixty days) to be given, in the section of country most interested adversely to the extension of the application, that any person may appear and show cause why the extension should not be granted, the taking of testimony, a hearing of applicant and contestant before the commissioner, and a decision on the evidence. Patent Act 1836, § 18 [5 Stat. 124]; Day v. Goodyear [Case No. 3,678]; Battin v. Taggart, 17 How. [58 U. S.] 84; Woodworth v. Stone [Case No. 18,021], approved in Brooks v. Fiske, 15 How. [56 U. S.] 228; Brooks v. Bicknell [Case No. 1,944]; Field v. Seabury, 19 How. [60 U. S.] 332. If there was any fraud, defendants knew of it. Saratoga & S. R. v. Row, 24 Wend. 74. They have confirmed and ratified the fraud by accepting and working under a license granted after the extension. Edmunds v. Hildreth, 16 Ill. 216; Bronson v. Wiman, 10 Barb. 406. They stipulated not to oppose the extension. There is no proof of damage to them in consequence of the fraud. Fraud and damage must be coupled to entitle a party to relief. Clark v. White, 12 Pet. [37 U. S.] 196; Jackson v. Eaton, 20 Johns. 478; Story, Eq. Jur. § 203. Defendants were willing the extension should be obtained, and

"volenti non fit injuria." The evidence of fraud must be strong and cogent. Clark v. White, 12 Pet. [37 U. S.] 196; Henry v. Henry, 8 Barb. 588, 592. See Philadelphia & T. R. Co. v. Stimpson, 14 Pet. [39 U. S.] 458.

It is a favorite principle governing the action of every court, and especially that of a court of equity, that where an act is susceptible of two constructions, one of which will destroy and the other sustain it, the latter is always to be preferred. This simply supposes legality, rather than illegality. Hence the maxim, "Ut res magis valeat quam pereat". The license to the Naugatuck Company was recorded September 16, 1844, and properly so. A license with a covenant that the parties will not grant any conflicting license, may be deemed a grant of an interest in the patent, and therefore to be recorded. Any subsequent grant or license, after such record, would be void as against the first. Washburn v. Gould [Case No. 17,-214.] Respondents allege that the reissues of the patent of June 15, 1844, are void. That question cannot be inquired into in this suit, for the action of the commissioner granting the reissue is conclusive, unless a clear case of fraud is made out. Day v. Goodyear [supra]; O'Reilly v. Morse, 15 How. [56 U. S.] 63; Allen v. Blunt, [Case No. 216]; Battin v. Taggart, 17 How. [58 U. S.] 84; Philadelphia & T. R. Co. v. Stimpson, 14 Pet. [39 U. S.] 458, 459. If the action of the commissioner was not conclusive, the reissue of this patent has twice been judicially declared valid. Goodyear v. Day [Case No. 5,566]; Goodyear & N. E. Car-Spring Co. v. Elastic Car-Spring Co. [Id. 5,588]. These decisions were recognised and acted upon by this court in an action against these parties. It must be regarded as res judicata. The claim for the product "vulcanized rubber" is not broader than the invention of Goodyear. The product is not claimed independently of the process by which it is produced. The claim is for the new article of manufacture, which is a combination of rubber with sulphur, whether with or without other ingredients, chemically altered by the application of heat, as described. If there are other methods substantially different, they and the products thereof belong to the inventors or the public. The phrase "whether with or without other ingredients" must be construed in view of the specification. One method described therein is with sulphur alone, and another is by combining it with other ingredients. The claim, then, is for either of these two methods. The claim for "subjecting India-rubber or other vulcanizable gums mixed with, or in the presence of sulphur, to the action of heat," &c., is not void by reason of claiming "other vulcanizable gums." The gist of the invention is not the material employed, and this does not limit the invention. The gist of the invention is the new process, and if that process is followed, the material operated upon does not take the process out of the scope of the invention. Hotchkiss v. Greenwood, 11 How. [52 U. S.] 248.

J. H. Parsons, A. Payne, and C. Cushing, for defendants.

This suit cannot be maintained, for the reason that the will of Charles Goodyear, deceased, names three executors, and but one of them is made a party complainant. Selw. N. P. 803; Wankford v. Wankford, 1 Salk. 308; Williams, Ex'rs, 235, note 2; 3 Bac. Abr. 33; 1 Saund. Pl. & Ev. 1111; 1 Chit. Pl. 20; Bodle v. Hulse, 5 Wend. 313; Cro. Jac. 420. The patent granted to Charles Goodyear, June 15, 1844, and reissued December 25, 1849, and extended June 15, 1858, was invalid. And the strongest proof is that the executor, in applying in 1860 for a reissue, claimed in the proposed new specification "all other ingredients," those claimed in the reissue of 1849 being only "a carbonate, or other salt, or oxide of lead." The reissues of this patent, granted on the 20th of November, 1860, to Charles Goodyear, Jr., claiming to be executor of Charles Goodyear, deceased, were invalid. On the 15th of June, 1844, a patent was granted to Charles Goodyear, deceased. On the 25th of December, 1849, the same was reissued, it having been surrendered, the bill alleges, "on account of a defective specification." The patentee having died in July, 1860, his son, the first party named in the bill, claiming to be executor of his father's will, surrendered the reissued patent of 1849, and the same was again reissued to him, as an executor, on the 20th of November, 1860, in two patents. The language of the claim of the reissued patent of 1849 is this: "What I claim as my invention, and desire to secure by letters-patent is the curing of caoutchouc, or India-rubber, by subjecting it to the action of a high degree of artificial heat, substantially as herein described, and for the purpose specified. And I also claim, the preparing and curing the compound of India-rubber, sulphur, and a carbonate or other salt, or oxide of lead, by subjecting the same to the action of artificial heat, substantially as herein described."

The claims of the reissued patent of 1860, or rather of the two patents, in which form it was then reissued, are these: Of the first: "What is claimed as the invention of Charles Goodyear, deceased, is the new manufacture called vulcanized India-rubber, which is a combination of India-rubber with sulphur (whether with or without other ingredients) chemically altered by the application of heat, substantially as described." Of the second: "What is claimed as the invention of Charles Goodyear, deceased, is caoutchouc, or India-rubber, or other vulcanizable gums, mixed with or in the presence of sulphur (whether with or without other ingredients) and subjected to the action of heat, for the purpose of affecting its qualities or properties as described."

Now the differences between the reissue of

1848 and that of 1860 are these: The first claimed the curing of caoutchouc, or rubber, and sulphur by subjecting it to heat. And also the preparing and curing the compound of rubber, sulphur, and a carbonate or other salt or oxide of lead, by subjecting it to heat. The second claims: 1st. The new manufacture called vulcanized India-rubber. 2d. The subjecting caoutchouc, or India-rubber, or other vulcanizable gums, mixed with or in the presence of sulphur, to the action of heat, for the purpose of affecting its qualities. 3d. The so subjecting such compound, whether with or without other ingredients, to the action of heat, &c. The first is for a process only; the second for the process and the product. The first limits the gums to be mixed and cured to caoutchouc, or India-rubber; the second claims not only these, but all vulcanizable gums. The first limits the other substances, with which caoutchouc, or rubber, and sulphur may be mixed, to a carbonate or other salt, or oxide of lead; the second claims all other ingredients whatever. The defendants consequently claim that this patent, as reissued, is wholly invalid, because it claims more than either the original invention or the reissued patent of 1849. It is "too broad, and not warranted by law." O'Reilly v. Morse, 15 How. [56 U. S.] 112. Gutta-percha is neither caoutchouc nor India-rubber; but it is notoriously a "vulcanizable gum."

The reissue of 1849 claims more than the original did. The original claimed "a carbonate or other salt or oxide of lead"; the reissue claims all vulcanizable gums to be subjected to heat in combination with sulphur, whether with or without other ingredients. Now, there are some vulcanizable gums which cannot be vulcanized with the process set out in Goodyear's specification of 1849; add, however, two, sometimes three additional ingredients, and they can be vulcanized. The license to the Naugatuck Company is not an exclusive license. The words "full and absolute" do not mean exclusive. The parties themselves so understood, for the license provides that in case Goodyear shall sell rights to others, the company shall have a claim for damages. Thus the instrument itself contemplates the granting of other rights under certain specified conditions, and the company has its remedy on the violation of these conditions, which clearly proves that it is not, nor was it at the time it was made, an exclusive license. As to the language and expressed intent necessary to constitute an exclusive license, see Gayler v. Wilder, 10 How. [51 U. S.] 495; Brooks v. Byam [Case No. 1,948]. But suppose the license was exclusive, defendants claim to manufacture under a license from Charles Goodyear, June 25, 1846, and that this was given with the assent of the Naugatuck Company, and with a waiver of its preemptive right in favor of the licensee, E. M. Chaffee. It is the grant of a free right or license to Chaffee, first, to use Goodyear's metallic gum-elastic composition, for coating cloths for the purpose of japanning, marbling, and variegate japanning; and, second, together with all the rights to make and dispose of such japanned or marbled and variegated cloths, in and so far as Goodyear has obtained any rights, patents, or improvements, and in all that he may have, and in all patents granted and to be granted or belonging to said Goodyear. The extension, on the 14th of June, 1858, of the patent granted Charles Goodyear, deceased, by the commissioner of patents, was procured by said Goodyear upon a false and fraudulent representation, for the purpose of deceiving the commissioner and the public, and of obtaining said extension, in fraud of the requirements of the act of congress in this behalf. The fraud in the extension of 1858 consisted, first, in collusion between the friends and certain pretended opponents of the patent, whereby the commissioner was deceived.

In discussing the law, as applicable to the fraud thus proven, the defendants begin, by asserting the principle, that fraud avoids everything ab initio, both in law and equity, "whether the object be to deceive the public or third persons, or one party endeavor thereby to cheat another." Bouv. Law Dict. 547, and cases there cited. See Dalamere's Case, 1 Plowd. 346; Fermor's Case, 2 Coke, 202; U. S. v. Gomez, 23 How. [64 U. S.] 326; Whittemore v. Cutter [Case No. 17,600]; Odiorne v. Winkley [Id. 10,432]; Gray v. James [Id. 5,718]; Whitney v. Emmett [Id. 17,585]; Stimpson v. West Chester R. Co., 4 How. [45 U. S.] 380; Clum v. Brewer [Case No. 2,909]. The defendants are entitled to have the material issues of fact in this case submitted to a jury. The first question of fact raised is, whether the patent granted Goodyear, June 15, 1844, reissued December 25, 1849, extended June 15, 1858, was valid. This patent has never since the date of its original issue been before a jury. It has never received a final adjudication from a court of last resort. See Davis v. Palmer [Id. 3,645]; Reutgen v. Kanowrs [Id. 11,710]; Park v. Little [Id. 10,715]; Carver v. Braintree Co. [Id. 2,485]; Parker v. Stiles [Id. 10,749]; Battin v. Taggert 17 How. [58 U. S.] 85.

The second question is, whether or not the reissues of 1860 are valid. This question was discussed, in its legal aspect, under the third point of the brief. The court may be satisfied, in view of the rules of law as gathered from the authorities there cited, that this patent, as reissued, is absolutely void upon its face, as compared with the surrendered patent, and that no further discussion is to be had upon it. If not, they are proper questions for a jury, under this point, and special reasons why they should be tried by one. The answer denies, absolutely, the validity of this reissue, on all grounds. Then we may ask a jury: Was there any fraudulent intent on the part of the executor in applying for this reissue? Did he know what men of science had done between 1849 and 1860? Was this

extension applied for deliberately and fraudulently, and with the design to make this patent "more elastic and expansive, and more available for the suppression of all other inventions?" The question whether the reissue is for a new or another invention, or contains a broader claim, is proper for a jury. So is the question of fraud in obtaining it. Stimpson v. West Chester R. Co., 4 How. [45 U. S.] 404; Carver v. Braintree Co. [supra]; Battin v. Taggert, 17 How. [58 U. S.] 85; Brooks v. Fiske, 15 How. [56 U. S.] 220. This third issue raised is, whether or not the articles made or the process by which they are made by the defendants infringe any rights of the complainants. The question certainly deserves to be considered and to be the subject of a trial by jury, whether the gums discovered after the Goodyear invention, are not, in fact, different substances, on which his patent will not act, and to which it could not have been intended to apply; and, consequently, it is certainly a fair question to be submitted to a jury, whether or not the process or processes, which the defendants use, are infringements of the Goodyear process; and this constitutes a special reason why issues should be granted in this case.

It is an almost universal rule that fraud is a question for a jury to decide. Burlew v. O'Niel [Case No. 2,167]; Sherwood v. Marwick, 5 Greenl. 295; McDonald v. Trafton, 3 Shep. [15 Me.] 225; Myers v. Hart, 10 Watts, 104. The defendants now refer the court to authorities upon the general question of issues out of chancery, their nature, and in what cases they will be granted. See 2 Daniell, Ch. Pr. 1085, 1118 et seq.; 2 Smith, Ch. Pr. 74 et seq.; Adams, Eq. 376 et seq., and notes; Story, Eq. Jur. § 1478. See, also, Kent v. Burgess, 11 Sim. 361, in which the court granted issues before the publication of the evidence. See, also, Casborne v. Barsham, 2 Beav. 80. Courts of equity have, for a great number of years, where questions of fact have been disputable, thought it a more proper exercise of their jurisdiction to have them tried by a jury. Dawson v. Chater, 9 Mod. 90; O'Connor v. Cook, 8 Ves. 535; Dexter v. Providence Aqueduct Co. [Case No. 3,864]. A jury trial will be ordered where such a course will be most conducive to the ends of justice. New Orleans Gas Light and Banking Co. v. Dudley, 8 Paige, 452. See, also, Belknap v. Trimble, 3 Paige, 601; East India Co. v. Donald, 9 Ves. 274; Garwood v. Eldridge, 1 Green, Ch. [2 N. J. Eq.] 290. If important rights are depending on questions of fact, a feigned issue may properly be awarded. Apthorp v. Comstock, 2 Paige, 482. See, also, Bishop of Winchester v. Fournier, 2 Ves. Sr. 446. The strictest application of the rule is, that the granting of issues is a matter resting in the discretion of the court. Hampson v. Hampson, 3 Ves. & B. 43. See, also, Field v. Holland, 6 Cranch [10 U. S.] 8; Brockett v. Brockett, 3 How. [44 U. S.] 691; Adams, Eq. 815; 3 Greenl. Ev. § 266.

CLIFFORD, Circuit Justice. The general rule is that an interlocutory order for issues to a jury in an equity suit will not be directed until all the proofs are taken and publication has passed. The reason for the rule, as stated, is that such an order should not in general be granted at all where the truth of the facts can be conveniently and satisfactorily ascertained by the court itself; and as that question cannot usually be determined in advance of publication, the motion should be deferred to that stage of the controversy. Whitaker v. Newman, 2 Hare, 302; Dale v. Roosevelt, 6 Johns. Ch. 255; U. S. v. Samperyac [Case No. 16,216a]; Clayton v. Meadows, 2 Hare, 29; Adams, Eq. 376; Baker v. Williamson, 2 Pa. St. 116; Johns v. Erb, 5 Pa. St. 237.

Oral testimony undoubtedly, if the order be granted, may afterwards be introduced before the jury, but the better practice is to defer the granting of the motion until the whole evidence to be taken under the equity rules is before the court. Lee v. Beatty, 8 Dana, 207. The federal courts under the constitution of the United States and the laws of congress, as now existing, have the power of deciding every question of law or fact which may arise in equity suits over which they have complete jurisdiction, and consequently it is not indispensably necessary as matter of law in any case that any question in an equity suit should be sent to a jury. Fornshill v. Murray, 1 Bland, 485; Ward v. Hill, 4 Gray, 593.

Trial by issue, indeed, forms no necessary appendage to a court of equity even in the parent country, and never did, except that, perhaps, an heir at law, where the object of the suit was to divest him of a freehold estate of which his ancestor died seised; or the rector of a parish, where his common-law right to tithes was drawn in question, might be entitled to issues as matter of right. Excepting those cases, it is clear that the motion for issues was always regarded as one addressed to the sound discretion of the chancellor; and it was for him to determine whether, in view of the whole evidence, as exhibited in the record, he would decide the controversy himself or send it to the common-law courts for the opinion of a jury. 2 Daniell, Ch. Pr. 1090.

When the chancellor directs such an issue, he, in general, does it upon the ground, that the evidence produced before him in the record, is not of a character, or not sufficient, to enable him to arrive at a satisfactory conclusion. Such being the state of the case, he directs the issue to be tried by a jury, for the purpose of collecting additional evidence to enable him to decide the cause. Consequently the verdict, when certified from the court to which the issues were sent, is never to be regarded as conclusive, but only as advisory, and may be set aside, or even overruled. Silsby v. Foote, 20 How. [61 U. S.] 385; 3 Greenl. Ev. § 261. The circuit court held in that case that the patent was valid, notwithstanding the verdict of the jury to the contrary, and also that the defendant had been

guilty of an infringement; and the supreme court affirmed the decree.

Judge Story also says, in substance and effect, that the verdict is never, in point of law, conclusive upon either party. Story, Eq. Jur. § 1479; Barnes v. Stuart, 1 Younge & C. Ex. 119; Chit. Eq. Dig. 2856. The practice accordingly is, that the party against whom the verdict is, has the right, notwithstanding the verdict, to proceed in the cause, and if the evidence was not closed under the rules, or if closed, by leave of court first had and obtained, to go into evidence in support of his case. Ansdell v. Ansdell, 4 Mylne & C. 454. Twelve years ago a similar application was made to the presiding justice of the Third circuit, and he refused to grant the motion, substantially upon the ground that the merits of the controversy involved no difficulties which would be removed or confirmed by the verdict of a jury. Goodyear v. Day [Case No. 5,569].

Applying those rules to the present case, it only remains to say, that upon a careful examination of the record it does not appear that the questions presented, and the state of the evidence, are such that the verdict of a jury is necessary to enable the court to reach a satisfactory conclusion. Reference will only be made to such of the defenses, set up in the answer, as were urged upon the consideration of the court at the final hearing. Defences set up in the answer, which were not pressed at the argument, will be regarded as waived. The argument for the respondents objects to the right of the complainants to maintain the suit upon four special grounds, which will be separately considered, before proceeding to the examination of the questions usually regarded in such cases as more immediately involving the merits of the controversy.

The first special objection is, that only one of the persons named as executors in the last will and testament of the original patentee is made a party to the bill of complaint. The second objection is, that the reissued patents on which the suit is founded are invalid, because the description of the alleged invention, and of the manner and process of making, constructing, using, and compounding of the same, as contained in the respective specifications, is not set forth in such full, clear, and exact terms, as to enable any person skilled in the art or science to which it appertains to practise the invention. The third objection is, that the last-mentioned reissued letters-patent are severally invalid, because the present patentee claims therein more than was invented by the original applicant, or, in other words, that the reissued letters-patent are invalid, because they, or either of them, are not for the same invention as that for which the original patent was issued. The fourth objection is, that the extension of the patent granted to the original patentee, as already described, was procured by false and fraudulent representations, and therefore was null and void.

When there were several executors, the general rule at common law was that they must all join in the suit, though some were not of the required age, or had not proved the will, or had actually renounced before the ordinary. Smith v. Smith, Yel. 130; Brookes v. Stroud, 1 Salk. 3; Hensloe's Case, 5 Coke, 64; Creswick v. Woodhead, 4 Man. & G. 811; Bodle v. Hulse, 5 Wend. 313.

The reasons assigned for the rule were that all have the right to sue, and that neither the delay in proving the will, nor the renouncement before the ordinary, were sufficient to bar the right, and consequently that the executors not joined were still at liberty, whenever they pleased, to come in and accept the trust. 4 Bac. Abr. 41; 2 Williams, Ex'rs, 1588.

The principle of the rule is, that where the right to sue is derived under the will of the testator, the right to sue is equal in all the executors, and in such cases all must join in the suit, as in debt on bond given to the testator, or in a suit upon a bill of exchange or promissory note given to him while in full life. But where the right to sue is derived under the probate, and not under the will. as where the promise is to the executor, and of course subsequent to the death of the testator, the executor alone may sue, to whom the promise was given. Brassington v. Ault, 2 Bing. 177; 1 Saund. Pl. & Ev. 1111.

When the action in on a contract with the decedent, or for a tort to the goods before they actually came to the possession of the executor, the suit can be brought only on the title of the decedent, and consequently can only be maintained in a representative character; but where it is on a contract with the executor, express or implied, made after the death of the testator, or where it is for the price of goods sold by the executor, or for the tortiously taking the goods from his possession, or for converting or detaining the goods after the same are so taken, or for any tort to the goods while in the possession of the executor, the opinion is expressed in some jurisdictions that the suit, under such circumstances, can only be maintained by the executor in his own right, and the fact that he is named in the contract, in the first example supposed, will not have the effect to change the nature of the remedy. Kline v. Guthart, 2 Pen. & W. 491; Heron v. Hoffner, 3 Rawle, 393; West v. Chappell, 5 Gill, 228; Gayle v. Ennis, 1 Tex. 184.

Other courts hold, and perhaps for better reasons, that executors may in all cases sue in their representative character, where the money when recovered would be assets belonging to the estate, but all courts concede that the rule, as last stated, can only apply where all the executors participate in the contract, and that it does not make those parties to the contract who were not parties in point of fact. Heath v. Chilton, 12 Mees. & W. 638; Cowell v. Watts, 6 East, 405; Powley v. Newton, 6 Taunt. 453; 1 Chit. Pl. 204.

All concede, as before remarked, that where

the promise is to the testator, the suit, to be regular, must be in the name of all the executors named in the will, if alive; but the same authorities agree, that the defendant can only take advantage of the nonjoinder of one or more of the number by plea in abatement, after oyer of the probate, unless the defect is apparent on the face of the record 1 Wm. Saund. 292i, note k; 1 Saund. Pl. & Ev. 1111; Packer v. Willson, 15 Wend. 345.

The rule, as stated in a work of standard authority, is, that if only one of several executors or administrators bring an action, either of debt or assumpsit, or in tort, it is settled that the defendant can only take advantage of the non-joinder of the executor or administrator by pleading in abatement, after oyer of the probate or letters of administration, that the other executor or administrator therein mentioned, is alive and not joined in the action. 1 Chit. Pl. 20.

Unless the defendant plead the non-joinder in abatement, he is estopped from setting up the defence, as he cannot be allowed to prove the fact of non-joinder under the general issue. The correct practice on the part of the plaintiff is to sue in the name of all the executors, and if, on the return of the sheriff or marshal, one or more named in the will refuse to appear and qualify and join in the prosecution of the suit, the residue must resort to the process and proceeding of summons and severance. 2 Williams, Ex'rs (4th Am. Ed.) 1186, note t.

The practice is, that if one or more of the executors will not join with the rest in prosecuting the action, the court will issue a writ of summons ad sequendum simul, and upon their non-appearance at the return of it, will give judgment of severance so as to enable the rest to proceed without them. 1 Tidd, Pr. (per Troubat) 129; 20 Vin. Abr. 51 W. 55.

Such are the material rules and the course of proceeding upon this subject in actions in common-law jurisdictions, where there are no paramount statutory regulations. Most of the states have such regulations, rendering it competent for such of the executors as have proved the will, to prosecute the suit without the necessity of resorting to any such proceeding as that to which reference has been made. Were this a suit at common law, the complainants assume that the statutory regulations of this state would furnish the rule of decision. But it is unnecessary to examine that question at the present time. State regulations, to the extent that they define the rules of property, are regarded as furnishing the rule of decision, but they do not control or affect the process or practice of the federal courts. Wayman v. Southard, 10 Wheat. [23 U. S.] 1.

The present suit, however, is not one at common law, but is a bill in equity, wherein the laws of the state have no pretence of application in the question under consideration. In the federal courts the equity practice, when not controlled by an act of congress or

the rules prescribed by the supreme court, is in general regulated by the chancery practice of the parent country, as it existed prior to the adoption of what is called the "New Rules." Suppose it were otherwise, however, and that the question presented was really one to be controlled by the analogies of the common law, still it is quite obvious that the objection cannot be sustained. The bill of complaint is not founded on the title of the original patentee, but on the derivative title of the first-named complainant as executor of the last will and testament of Charles Goodyear, deceased. Were the suit founded on the last patent issued to the decedent, as it subsisted at the time of his decease, the analogy of the common law, if applicable to the case, would support the theory of the respondents. But such is not the fact, as every one must admit who has read the pleadings. The reissued patent on which the suit is founded is a new contract made between the government and the first-named complainant since the decease of the original patentee. The proofs show that the other persons named as executors did not prove the will, and that they had nothing to do either with the surrender or the reissue of the letters-patent on which the suit is founded. The consequence was that they were not named in the letters-patent, and, of course, are not patentees in any sense whatever. The damages to be recovered, if any, may belong to the estate, but it is clear, even in cases where the rules of the common law apply, that the circumstances that the damages to be recovered may become assets, is not sufficient of itself to make any one a party to the contract who did not participate in the transaction, and who was not so in point of fact.

The second special objection is, in effect, that the description of the alleged invention, and of the manner and process of making, using, and compounding the same, as contained in the respective specifications, is not set forth therein in such full, clear, and exact terms as to enable any person skilled in the art or science to which it appertains to practise the invention. The reply of the complainants to this objection is, that such a defence is not open to the respondents, because none such is set up in the answer; and upon a careful examination the suggestion appears to be correct. The record shows that application was made to the court for leave to amend the answer in that behalf, but upon full consideration the motion was denied. The suggestion of the complainants is decisive, and the objection is accordingly overruled. Foster v. Goddard, 1 Black [66 U. S.] 518; Sims v. Guthrie, 9 Cranch [13 U. S.] 19; Harrison v. Nixon, 9 Pet. [34 U. S.] 483; Boon v. Chiles, 10 Pet. [35 U. S.] 178; Tripp v. Vincent, 3 Barb. Ch. 613.

The next objection of the respondents is, that the respective reissued letters-patent on which the suit is founded are invalid, because

the present patentee claims in each of them more than was invented by the original applicant. The original patent was granted to the inventor on the 15th of June, 1844, as alleged in the bill of complaint. The same was surrendered and reissued to the original patentee on the 25th of December, 1849, on account of a defective specification. The letters-patent, as reissued, were extended on the 15th of June, 1858, for the further term of seven years. The inventor died on the 1st of July, 1860, and his son Charles Goodyear, Jr., was appointed his executor. His first step, as such executor, was to surrender the patent, as previously reissued to the inventor, and the same was thereupon reissued to him, as executor, in two parts. The last-mentioned letters-patent are those on which the present suit is founded.

The proposition of the respondents is, that both of those patents are void for several reasons. Briefly described, one of the patents is for a new product or manufacture, and the other is for a new process or method by means of which the new product or manufactured article is produced. The theory of the respondents is, that they are both void. 1. Because the subject-matter of the respective claims is not separable. 2. Because each of the respective claims, as they insist, is broader than the invention made by the original patentee.

In the judgment of this court, the first objection is wholly untenable. The legal effect of the fifth section of the act of the 3d of March, 1837, is to authorize the patent office, whenever a patent is properly returned for correction and reissue, under the thirteenth section of the prior act of congress conferring such authority, to reissue the same in several patents for distinct and separate parts of the thing patented, provided the patentee shall desire it, and shall pay the additional sum or sums required, as specified in the provision. 5 Stat. 192. No doubt can be entertained that a new product or manufacture, and a new process or method of producing the new article, are the proper subjects of separate and distinct claims in an original patent; and if so, then it is equally clear that the patentee under that provision, upon a return of the patent for correction and reissue, and upon complying with the conditions therein specified, may have several patents for the distinct and separate parts of his invention.

The second objection, however, is entitled to more weight, and will deserve more consideration. The claim of the patent, as reissued to the original inventor, was as follows: "What I claim as my invention, and desire to secure by letters-patent, is the curing of caoutchouc, or India-rubber, by subjecting it to the action of a high degree of artificial heat, substantially as described, and for the purpose specified; and I also claim the preparing and curing the compound of India-rubber, sulphur, and a carbonate or other salt, or oxide of lead, by subjecting the same to the action of artificial heat, substantially as herein described." Appropriate words are used in both claims referring back to the descriptive portions of the specifications.

India-rubber, as the patentee states, was useless in its native state for many of the purposes for which it may be used, for the reason that it will become soft and sticky, and finally dissolve under the action of a moderate degree of heat. His effort was to discover some method of preparing it by which its melting or softening property should be removed or neutralized. Partial results were at first attained, but not sufficient to render the discovery of general practical utility. At length, however, he became impressed with the idea that the native rubber might be subjected to heat, in the process of preparation, at some degree of temperature beyond the highest to which the fabric would be exposed in its ordinary use. Experiments were accordingly instituted, and the result was that the patentee discovered that he could accomplish the desired end.

Those experiments showed that the native rubber, when subjected to heat by itself, could not be cured or deprived of its sticky or soluble properties, which led him to experiment upon it in connection with other substances. When compounded with sulphur, by the application of a high degree of artificial heat, he obtained a good result, but when compounded with sulphur and the carbonate of lead he obtained the best results. All the experiments, however, showed that a satisfactory result could not be obtained without the action of a high degree of artificial heat, which the patentee states is the great agent in his method of curing the native rubber. The nature of the first part of the invention, as stated by the patentee, consists in curing the native rubber when combined with, or in the presence of, sulphur, by submitting the same to the action of a high degree or artificial heat.

The second part of the invention consists in preparing and curing the compound of the native rubber, sulphur, and a carbonate or other salt, or oxide of lead, for the accomplishment of the purpose described. "Any other mode of reducing and dissolving the India-rubber, and compounding it with the other substances," says the patentee, "may be substituted for that above described; and although I have described the compound as consisting of India-rubber, sulphur, and white lead, I do not mean to limit myself to this compound. When a high degree of artificial heat is used, as good results may be and have been obtained by me, by dispensing with the lead; and it is immaterial, so far as regards the principle of my invention, whether the sulphur is incorporated with the India-rubber by admixture in the solid form, or spread on the surface thereof, or combined therewith in the gaseous or other form, previous to or during the process of curing by heat."

The claim of the patent for a new and useful improvement in the manufacture of caoutchouc, as reissued to the present patentee, is as follows: "What is claimed as the invention of Charles Goodyear, deceased, is the new manufacture called vulcanized India-rubber, which is a combination of India-rubber with sulphur (whether with or without other ingredients), chemically altered by the application of heat, substantially as described.

The phrase, "whether with or without other ingredients," is the one to which the objection under consideration is particularly applied. The rule, "Ut res magis valeat quam pereat," is as applicable to patents as to any other instruments in regard to which it is the duty of the court to adopt a liberal construction, in order to give effect to the intention of the parties. Ryan v. Goodwin [Case No. 12,186]; Evans v. Eaton, 3 Wheat. [16 U. S.] 512.

The duty of the court is to collect the intention of the parties from the whole instrument, and, if practicable, to adopt such construction as will give it effect, and render it available for the purpose for which it was granted. Applying that rule to the present case, it is obvious that the objection to the first patent, on which the suit is founded, cannot be sustained.

Reference is made in the body of the specification to the use of sulphur, in combination with the native rubber, and to the subjecting of the compound to the action of a high degree of artificial heat, precisely as in the prior patent issued to the original patentee. Mention is then made, substantially as in the prior patent, that other substances, to wit, white lead, or other salts of lead, may be combined with the mixture composed of native rubber and sulphur, "thereby forming a triple compound." Plainly, therefore, the words "other ingredients," as used in the claim, refer to the ingredients other than native rubber and sulphur, as used in the specification; and when so understood, the language of the claim is free from objection.

The description of the claim in the other patent, on which this suit is founded, is in the following words, to wit: "What is claimed as the invention of Charles Goodyear, deceased, is the subjection of caoutchouc, or India-rubber, or other vulcanizable gums, mixed with or in the presence of sulphur (whether with or without other ingredients), to the action of heat, for the purpose of affecting its qualities or properties as described. The same objections are made to this claim as to the claim of the preceding patent, and they must be overruled for the same reasons.

But another objection is taken to this claim of a very different character. The express terms of the claim make it include not only native rubber, when compounded with sulphur and subjected to a high degree of artificial heat, but all other vulcanizable gums, whether with or without other ingredients. Nothing of the kind is described in any one of the patents granted to the original inventor, nor even in the patent to which the claim is annexed.

Under the circumstances, I am of the opinion that the claim of this patent is broader than the invention of the original patentee, and consequently that it is void, because it is not for the same invention as the patent which was surrendered as the foundation of the reissue. O'Reilly v. Morse, 15 How. [56 U. S.] 112; Battin v. Taggert, 17 How. [58 U. S.] 83; Burr v. Duryee, 1 Wall. [68 U. S.] 531; Leroy v. Tatham, 14 How. [55 U. S.] 175.

The fourth special objection is, that the extention of the patent granted to the original patentee, was procured by false and fraudulent representations, and therefore was null and void.

The answer alleges that the licensees of the patentee had the exclusive management and control of the application for the extension; that they paid the expenses of the application; and that for the purpose of fraudulently procuring the commissioner to grant the same, they paid large sums of money to sundry persons, to induce them to withhold or withdraw opposition to the application, and thereby wilfully and fraudulently caused the suppression of facts which, if they had been made known to the commissioner, would justly and legally have prevented him from granting the extension.

Special mention is then made of a person who appeared and made opposition to the application, and the allegation is, that the licensees, for money, induced him to withhold his opposition, but not to withdraw his appearance, in order that it might fraudulently appear that all the facts which could be adduced against the application, were brought to the notice of the commissioner.

Strong doubts are entertained whether the allegations of the answer are sufficient to constitute a defence in this case, but it is not necessary to place the decision upon any such ground, as I am of the opinion that the defence cannot avail the respondents for several reasons, which will be briefly stated.

Suit is brought in this case against the respondents as infringers, and in the judgment of this court, the defence that the patent as reissued to the original patentee, was extended by fraud, as set up in the answer, cannot avail them as a justification for the acts alleged in the bill of complaint. Field v. Seabury, 19 How. [60 U. S.] 332; Gibson v. Gifford [Case No. 5,395].

The decision of the commissioner was made by a tribunal with full powers to examine and decide, and inasmuch as there is no provision for an appeal to any other jurisdiction, the decision must in general be regarded as final, in all collateral proceedings. Colt v. Young [Id. 3,032]; Foley v. Harrison, 15 How. [56 U. S.] 448; Bartlett

v. Kane, 16 How. [57 U. S.] 263; Jackson v. Lawton, 10 Johns. 24.

Where the imputation of fraud arises in a proceeding between the government and the patentee, to set the patent aside, or where the question arises between the patentee and a third person whose rights of property were directly involved in the question of extension, proof of fraud in obtaining the extension is sufficient to defeat the patent; but the proof, to avail the party making the imputation, must be clear and satisfactory. Battin v. Taggert, 17 How. [58 U. S.] 84; Woodworth v. Stone [Case No. 18,021]; Brooks v. Fiske, 15 How. [56 U. S.] 228; Brooks v. Jenkins [Case No. 1,953]; Field v. Seabury, 19 How. [60 U. S.] 332.

The proof in this case that the extension was procured by fraud is not satisfactory. On the contrary, it shows, taken as a whole, that the extension was granted on account of the just claim of the inventor, and the great merit of the invention. But if it were otherwise, still the defence, under the circumstances of this case, cannot avail the respondents, in the judgment of this court, because they consented to the acts which are now the subject of complaint. Saratoga, & S. R. Co. v. Row, 24 Wend. 74.

Suppose the patent was duly extended, still the respondents contend that they are not liable, because they insist that Charles Goodyear, deceased, was not the original and first inventor of the improvement embodied in the first-mentioned reissued letters-patent on which the suit is founded. That proposition embraced both of the reissued letters-patent described in the bill of complaint; but having come to the conclusion that the other is void, because the claim is broader than the invention, it is unnecessary to remark further upon it at the present time. The record shows that the questions involved in that proposition have been repeatedly heard and determined in the circuit courts of the United States. Suffice it to say, that this court, under the circumstances, considers it proper to follow those decisions. Many years have elapsed since they were announced, and, so far as appears, there has been no effort made to call them in question. They are believed to be correct, and consequently are adopted upon the point under consideration.

My conclusion, therefore, is, that Charles Goodyear was the original and first inventor of the improvement described in the first-mentioned reissued patent on which this suit is founded. The admission of the respondents is, that in the manufacture of India-rubber goods they use a compound of India-rubber in which sulphur is present when the composition is subjected to the action of artificial heat, so as to produce the changes and effects mentioned in the bill of complaint. Taken as a whole, the evidence is so full that the respondents must be regarded as infringers, unless justified under a certain license

set up in the case, that it seems unnecessary to pursue the investigation.

The last proposition submitted by the respondents is, that they are not infringers, because they manufacture their goods under a license from the original patentee, which, as they insist, is valid and outstanding, and is a complete defence to the present suit. The license referred to is dated the 25th of June, 1846, and is signed by the original patentee. Free license is thereby granted to E. M. Chaffee, his executors, administrators, and assigns, for and in consideration of $1, to use the said Goodyear's metallic gum-elastic composition for coating of cloths for the purpose of japanning, marbling, and variegate japanning, at his own establishment, but not to be disposed of to others for that purpose without the consent of said Goodyear. Two answers are made by the complainants to that defence. 1. They refer to a license of prior date held by them, and contend that by the true construction it confers upon them the exclusive right to use any and all of the inventor's improvements for manufacturing cloths, or any other article of merchandise, or any article to which the same may be applicable. 2. But if the court holds otherwise, then they contend, in the second place, that the license under which the respondents profess to act, confers no authority even upon the licensee therein named to manufacture any of the articles specified in the bill of complaint.

The first proposition of the complainants, in the judgment of this court, cannot be sustained, because the patentee expressly reserved to himself, his heirs, executors, administrators, or assigns, the right to sell for a stipulated price or sum, in gross, the exclusive right for the unexpired period or periods, for which the same may be vested in him or them, of making, using, or vending said preparations or improvements, or of applying the same to or for any specified purpose or purposes only, or to and for all the purposes and uses to which said improvements may be adapted or applied. The legal effect of the proviso following the reservation is not, in the judgment of this court, to render the reservation void, but only to impose upon the party granting the license, the obligation to extend the pre-emption right of purchase to the licensees, and in case of non-compliance with his agreement, to render him liable in damages.

Granting all that, still I am of the opinion that the complainants must prevail upon the second ground. The respondents' license, or the one under which they claim to act, authorizes the licensee therein named, to use the inventor's metallic gum-elastic composition for coating cloths, for the purpose of japanning, marbling, and variegate japanning; but there is not a word in it to justify the conclusion that it confers any authority to manufacture the articles which are the subject of controversy in this suit. Abund-

ant evidence appears on the face of the instrument, that it was intended to apply only to the particular style of goods therein mentioned and described. First, the licensee was to have a free license to use the described composition for coating cloths for the purpose of japanning, marbling, or variegate japanning. Second, he was to have all the right to make and dispose of the aforesaid japanned, marbled, or variegated cloths, in and so far as the patentee had obtained any rights, patents, or privileges. Third, the patentee covenanted not to dispose of concurrent rights to any other person or persons, for the manufacture of cloths for the purposes aforesaid. Fourth, the licensee was to pay at the rate of three cents per square yard of cloth japanned, marbled, or variegated as aforesaid. Fifth, he was to keep regular books of account of all manufactured cloths to be japanned. Sixth, the license closes with these words: "In the event of any improvement being made in the manufacture or composition of said gum-elastic for the aforesaid purposes, such improvements shall become the property of said Goodyear, and may be patented by him at his own expense, and for the use of the licensees, and his assigns, for the purposes aforesaid, according to the terms of this license, so far as said improvements may apply to the manufacture of japanned, marbled, and variegated cloths, as aforesaid."

For these reasons, I am of the opinion that the respondents, acting under that license, are restricted to the manufacture of cloths to be japanned, marbled, and variegated, as therein described, and that it confers no authority to manufacture any of the articles specified in the bill of complaint. Decree for complainants.

[NOTE. An appeal was then taken to the supreme court, and two motions were made,— the first by the appellees, to dismiss the appeal as not having been taken to the proper term; and the other by the appellants, to reduce the amount of the bond given on appeal. The opinion of the court was delivered by Mr. Chief Justice Chase, who said that although a decree was entered "as" of a prior date, the date of an order settling apparently the terms of a decree to be entered later, the rights of the parties in respect to the appeal are to be determined by the date of the actual entry of the final decree. He also said that security was not required in double the amount of the decree, but only that it be sufficient. 6 Wall. (73 U. S.) 153. The case was then heard on its merits, and the judgment was affirmed in an opinion by Mr. Justice Swayne. He said that, where a patent was granted to one executor, he could maintain a suit thereon as if he had been designated in the patent as trustee instead of executor. This is a specific grant by the government, and vests the legal title exclusively in him. In a reissue, the claim may be enlarged, or restricted so as to give it validity, and secure the invention. A process and the product may both be the subject of a patent, as being wholly disconnected, and independent of each other. 9 Wall. (76 U. S.) 788. [For other cases involving these patents, see note to Goodyear v. Central R. Co., Case No. 5,563.]